2009 UT 27

**CAFÉ RIO, INC., a Utah corporation, and Michael D. Hughes, as Trustee of the Vera R. Hughes Grandchildren's Trust, Plaintiffs and Appellees,**

v.

**LARKIN–GIFFORD–OVERTON, LLC, a Utah limited liability company, Defendant and Appellant.**

No. 20070618.

Supreme Court of Utah.

May 1, 2009.

Paul D. Veasy, T. Mickell Jimenez Rowe, Aaron D. Lebenta, Salt Lake City, Aaron D. Randall, St. George, for plaintiffs.

James A. Boevers, M. David Eckersley, Michael N. Zundel, Salt Lake City, Steven W. Beckstrom, St. George, for defendant.

## AMENDED OPINION

DURRANT, Associate Chief Justice:

### INTRODUCTION

¶ 1 In this case, we must determine the construction and parking rights of two adjacent landowners Larkin–Gifford–Overton, LLC ("LGO"), and Michael D. Hughes, Trustee of the Vera R. Hughes Grandchildren's Trust ("the Trust"), as established in the Declaration of New Easements and Covenants (the "Cross–Easement Agreement" or "Agreement") executed between the parties.[1] LGO owns Parcel 5 in a development in St. George; the Trust owns the adjacent Parcel 4.

¶ 2 In 2003, LGO filed suit against Café Rio and other defendants to determine the defendants' rights to park on LGO's Parcel 5. Café Rio is not a party to the Agreement, but is a tenant of the Hughes Building, which is owned by the Trust and located on the Trust's Parcel 4. To resolve the litigation, the parties entered into a settlement agreement (the "Settlement Agreement"), and the lawsuit was dismissed without prejudice.

¶ 3 A few months later, LGO began constructing a building on its Parcel 5. In response, the Trust and Café Rio brought suit, claiming that LGO's construction violated the terms of the Cross–Easement Agreement. The district court entered both a preliminary injunction stopping LGO's construction and a restoration order requiring LGO to restore the property to its pre-construction condition.

¶ 4 The Trust and Café Rio, and LGO, filed cross motions for summary judgment with respect to the parties' parking rights under the Cross–Easement Agreement. The court granted the Trust and Café Rio's motion, ruling that LGO "cannot construct a building on Parcel 5 without regard to the terms of the [Cross–Easement Agreement]." The court also enjoined LGO "from future violations of the parking agreements" and ruled that "LGO is judicially estopped from chal-

---

1. There are six contiguous parcels in the development at issue. Each parcel owner is a party to the Cross–Easement Agreement. We limit our discussion to LGO and the Trust because they are the only parcel owners who are parties to this dispute.

lenging Café Rio's [parking] rights under the Settlement Agreement." Thus, the court did not reach the question of whether the allowance of Café Rio restaurant customer parking on Parcel 5 merely because Café Rio maintained a district office on Parcel 4 constituted an overburdening of the easement. It is unclear whether the court reached LGO's claim that parking by Café Rio restaurant customers and employees on Parcel 5 was prohibited under the terms of the Cross–Easement Agreement. The court then granted attorney fees, costs, and interest on its costs to the Trust and attorney fees and costs to Café Rio.

¶ 5 LGO appeals, claiming that the district court erred in

(1) interpreting the Cross–Easement Agreement as limiting the location on which LGO could construct a building on Parcel 5 and granting summary judgment based on that conclusion;

(2) ruling that LGO is judicially estopped from challenging Café Rio's rights to park on Parcel 5; and

(3) granting attorney fees, costs, and interest to the Trust and attorney fees and costs to Café Rio.[2]

¶ 6 We reverse the district court's decisions and, for the reasons detailed below, hold that

(1) the Cross–Easement Agreement unambiguously allows LGO to construct a building without limitation on where that building may be placed on Parcel 5;

(2) LGO is not judicially estopped from challenging Café Rio's rights to park on Parcel 5; and

(3) the district court erred in granting attorney fees, costs, and interest to the Trust and attorney fees and costs to Café Rio. Thus, we reverse those awards.

¶ 7 Based on these holdings, we remand for the district court to determine whether LGO suffered compensable damages in connection with the preliminary injunction and the restoration order, whether parking by Café Rio restaurant customers and employees on Parcel 5 is prohibited under the terms of the Cross–Easement Agreement, and whether such parking on Parcel 5 overburdens the easement if it is allowed merely because Café Rio maintains a district office on Parcel 4. We also note that LGO is entitled to pursue attorney fees and costs related to the issue of its right to construct a building on Parcel 5.

## BACKGROUND

¶ 8 LGO owns Parcel 5, one of six contiguous parcels of real property in a development north of St. George Boulevard in St. George. The Trust owns the adjacent Parcel 4 and the Hughes Building on that parcel. Prior to February 2000, LGO had only one access point for vehicular traffic off of St. George Boulevard for Parcel 5; that access point was located about one-half block away. LGO contacted the Trust to inquire about obtaining an access easement across Parcel 4. As a result of their negotiations, the owners of all six parcels entered into the Cross–Easement Agreement.

¶ 9 The Agreement establishes common areas of open space in the center of the six parcels. These common areas are defined as, in part, "all of the areas of the Parcels ... designed for use as approaches, exits, entrances, and all parking lots, ... however expressly excluding all buildings (and any building(s) constructed on Parcels 5 and 6 in the future)."

¶ 10 The Agreement also grants each parcel owner the right to an "unobstructed view of any of the Parcels," and it provides a "nonexclusive easement for the parking of motor vehicles ... for the customers, invitees and employees of all business and occupants of the buildings constructed on ... any of the Parcels."[3]

2. LGO claims several additional errors by the district court, but because we hold that the district court erred in interpreting the Cross–Easement Agreement, it is unnecessary to reach these additional claimed errors.

3. After drafting the Cross–Easement Agreement in February 2000, the Trust and LGO entered into a separate agreement on April 3, 2000. Under the terms of the April agreement, the Trust agreed to provide LGO and the public an easement for ingress and egress across Parcel 4 into the common areas. The Trust and Café Rio

¶ 11 Café Rio leases space for its district office in the Hughes Building, which is owned by the Trust and located on Parcel 4. Café Rio also owns and operates a Café Rio Mexican Grill restaurant that is near, but not located on, any of the six parcels that are subject to the Cross–Easement Agreement. Nevertheless, Café Rio's restaurant customers and employees began parking on LGO's Parcel 5. In response, in April 2003, LGO brought suit against Café Rio and other defendants (the "2003 litigation"), claiming that Café Rio's restaurant customers and employees had no rights to park on Parcel 5 because the Café Rio restaurant was not a party to the Cross–Easement Agreement, is not located on any parcel of the property that is subject to the Cross–Easement Agreement, and therefore is "not ... entitled to benefit from the [parking easement]" that is established in the Cross–Easement Agreement. LGO further argued that allowing Café Rio restaurant customers and employees to park on Parcel 5 merely because Café Rio maintained a district office on Parcel 4 "unreasonabl[y] increase[d] the burden" on the easement. LGO then asserted claims for trespass, waste, and private nuisance, and sought a preliminary and permanent injunction.

¶ 12 The parties resolved the litigation by executing the Settlement Agreement. The court then entered an order of dismissal without prejudice, approving the Settlement Agreement.

¶ 13 Under the terms of the Settlement Agreement, the parties agreed that "[t]he parking of motor vehicles within the 'designated paved parking spaces' [on Parcel 5] shall be non-exclusive between the Parties, or their customers, employees, and/or invitees (on a first come, first serve basis), as provided in the [Cross–Easement Agreement]." LGO agreed not to tow any of Café Rio's customers' and employees' cars that were parked according to these terms. LGO

and Café Rio also, however, expressly reserved their rights to litigate the terms of the Cross–Easement Agreement.

¶ 14 In April 2004, LGO began constructing a two-story, 10,000 square foot building on the parking lot of Parcel 5. The Trust, Café Rio, and another parcel owner, Flood Street, initiated suit, claiming that LGO's building constituted an "obstruction" that was explicitly prohibited by the Cross–Easement Agreement and seeking injunctive relief and damages.

¶ 15 Plaintiffs sought and were granted a preliminary injunction to stop LGO's construction of the new building. LGO answered and brought four counterclaims, seeking declaratory relief that it could construct a building in any location of its choice on Parcel 5. LGO also asserted claims that it had raised in the 2003 litigation, again challenging Café Rio's restaurant customers' and employees' rights to park on Parcel 5.

¶ 16 In August 2004, the Trust, Café Rio, and Flood Street moved the district court to order LGO to restore the common area. Following a hearing, the court ordered LGO to do so. The court did not, however, resolve the issue of the parties' parking rights.

¶ 17 The parties then conducted discovery on their respective parking rights and filed cross-motions for partial summary judgment. The district court granted summary judgment for the Trust and Café Rio and denied summary judgment for LGO, ruling that (1) the Cross–Easement Agreement was "clear and unambiguous" with regard to the parking and construction rights of the parties;[4] (2) LGO breached the Agreement by interfering with the Trust's and Café Rio's parking rights; (3) LGO was judicially estopped from challenging Café Rio's parking rights; (4) LGO was enjoined from future violations of the [Cross–Easement] Agreement; and (5) LGO could "not construct a building on Par-

---

argue that the April agreement is relevant to our analysis. However, that agreement contains no provision prohibiting the construction of buildings on Parcel 5 or relating to parking rights. Hence, resolving this dispute hinges on the interpretation of the Cross–Easement Agreement alone.

4. The court's order was entitled "Order Granting Café Rio's and the Trust's Motion for Summary Judgment Re: Parking." While the title of the order suggests that it addresses only the issue of parking, the court determined that the construction of LGO's building interfered with the parties' parking rights, and, therefore, the court ruled on both the parking and construction issues in the summary judgment order.

cel 5 without regard to the terms of the [Cross–Easement] Agreement."

¶ 18 The Trust and Café Rio sought attorney fees and costs under the Cross–Easement Agreement.[5] The district court awarded the Trust and Café Rio attorney fees and costs; it also awarded the Trust 18% interest on its costs and expenses. The court entered final judgment in June 2007.

¶ 19 LGO timely appealed, claiming that the district court erred in

(1) interpreting the Cross–Easement Agreement as limiting the location on which LGO could construct a building on Parcel 5 and granting summary judgment based on that conclusion;

(2) ruling that LGO is judicially estopped from challenging Café Rio's rights to park on Parcel 5; and

(3) granting attorney fees, costs, and interest to the Trust and attorney fees and costs to Café Rio.

¶ 20 We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (2008).

## STANDARD OF REVIEW

 ¶ 21 We review a district court's interpretation of a written contract for correctness, granting no deference to the court below.[6]

## ANALYSIS

## I. THE DISTRICT COURT ERRED IN INTERPRETING THE CROSS–EASEMENT AGREEMENT

¶ 22 LGO first argues that the district court erred in interpreting the Cross–Easement Agreement as "prohibiting LGO from constructing buildings on Parcel 5" and in granting summary judgment based on that conclusion.

¶ 23 There are three provisions of the Cross–Easement Agreement that are relevant to determining whether LGO has the right to construct a building on its Parcel 5 without limitation on where that building may be placed: (1) the definition of "Common Areas," (2) paragraph 12, "Prohibition of Barriers," and (3) paragraph 2, "Composition and Use of Common Areas."

¶ 24 The district court interpreted the provisions of the Cross–Easement Agreement as being "clear and unambiguous" in limiting the location on which LGO could construct a building on Parcel 5. The district court was incorrect.

 ¶ 25 Under well-accepted rules of contract interpretation, we look to the language of the contract to determine its meaning and the intent of the contracting parties.[7] We also "consider each contract provision ... in relation to all of the others, with a view toward giving effect to all and ignoring none."[8] Where "the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[9] Only if the language of the contract is ambiguous will we consider extrinsic evidence of the parties' intent.[10] We have explained that "ambiguity exists in a contract term or provision if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies."[11] Additionally, "[u]nder the well-established rule of construction *ejusdem generis*," we determine the meaning of a general contractual term based on the specific enumerations that surround that term.[12]

---

5. The Trust and Café Rio also sought fees and costs under the April 3 agreement. As noted, the April 3 agreement is inapplicable to this dispute.

6. *Home Sav. & Loan v. Aetna Cas. & Sur. Co.*, 817 P.2d 341, 347 (Utah Ct.App.1991).

7. *See Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134.

8. *Id.* (ellipses in original) (internal quotation marks omitted).

9. *Id.* (internal quotation marks omitted).

10. *Deep Creek Ranch, LLC v. Utah State Armory Bd.*, 2008 UT 3, ¶ 16, 178 P.3d 886.

11. *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 20, 54 P.3d 1139 (internal quotation marks omitted).

12. *Swenson v. Erickson*, 2000 UT 16, ¶ 16, 998 P.2d 807.

¶ 26 The question presented here is whether the Cross–Easement Agreement unambiguously allows LGO to construct a building without limitation on where that building may be placed on Parcel 5. We hold that it does and address each of the provisions at issue: (1) the definition of "Common Areas," (2) paragraph 12, "Prohibition of Barriers," and (3) paragraph 2, "Composition and Use of Common Areas."

¶ 27 The Agreement defines "Common Areas" as "all of the areas of the parcels . . . [which are] designed for use as approaches, exits, entrances, and all parking lots, . . . however *expressly excluding all buildings (and any building(s) constructed on Parcels 5 and 6 in the future )*." (Emphasis added.) Citing this definition, LGO argues that it "has the right to construct buildings on its Parcel 5, and there are no [contractual] limitations on where those buildings may be placed." [13] LGO is correct.

¶ 28 The definition of common areas is clear and unambiguous: it defines precisely what is a common area and precisely what is not. Future buildings on Parcels 5 and 6 are not. Under this definition, then, the parties explicitly agreed that buildings would be constructed on Parcels 5 and 6, and the parties placed no limitation on the location of those buildings. By excluding buildings from the definition of common areas, the parties also implicitly agreed that buildings on Parcels 5 and 6 would not be subject to the restrictions placed on the defined common areas.

¶ 29 The Trust and Café Rio contend, however, that the explicit exclusion of buildings on Parcels 5 and 6 from the definition of common areas "merely ensures that buildings, unlike the Common Area parking lot and other defined areas, will not be available for unrestricted common use. It does not grant LGO carte blanch to put a building anywhere it wants, without regard for the other provisions of the Cross–Easement Agreement." The Trust and Café Rio cite paragraphs 12 and 2 as support for this conclusion.

¶ 30 Paragraph 12, entitled "Prohibition of Barriers," prohibits any parcel owner from construct[ing] or erect[ing] within any of the Parcels or on the perimeter of any of the Parcels, any fence, wall, barricade, *or obstruction*, whether temporary or permanent in nature, *which materially limits or impairs* the free and unimpeded flow of vehicular or pedestrian traffic between and among the Parcels or *the ability to have an unobstructed view of any of the Parcels.* (Emphases added.)

¶ 31 Citing the emphasized language in paragraph 12, the Trust and Café Rio claim that "[c]onstruction of a building . . . in a known and declared easement area is an 'obstruction.'" They also argue that the unobstructed view requirement is "perpetual and unchangeable," and that LGO's building would violate paragraph 12's prohibition of barriers by obstructing the view of other parcels.

¶ 32 When the provisions of the Cross–Easement Agreement are construed together, it is clear that the parties contemplated the construction of buildings and specifically indicated, as to each parcel, where buildings would be allowed and where they would be prohibited. As to Parcels 5 and 6, the definition of common areas provides for buildings on those parcels. Paragraph 2, "Composition and Use of Common Areas," on the other hand, explicitly prohibits any "building or other structure [from being] erected or placed upon any of the Common Areas of Parcels 1 through 4." Given this level of specificity regarding buildings, it is plain that the parties did not intend the general term "obstruction" to include buildings.

¶ 33 Additionally, interpreting "obstruction" to include buildings would eviscerate LGO's ability to construct a building on Parcel 5—a right explicitly bargained and provided for. We will not interpret a general contractual term such that it renders an explicit right meaningless.[14]

¶ 34 Furthermore, under the principle *ejusdem generis,* the general term "obstruc-

---

**13.** The only apparent limitations on where buildings may be constructed on Parcels 5 and 6 are the applicable zoning ordinances.

**14.** *See, e.g., Fairbourn Commercial, Inc. v. Am. Hous. Partners, Inc.,* 2004 UT 54, ¶ 11, 94 P.3d 292.

tion," as used in paragraph 12, should be construed according to the specific enumerations of "fence, wall, [and] barricade," that precede it. Under this interpretive framework, the term obstruction refers to those barriers that are similar to fences, walls, and barricades. A building is not similar in character or purpose to those barriers.

■ ¶ 35 The Trust and Café Rio also claim that LGO's building would violate paragraph 12's prohibition on any "obstruction . . . [that] materially limits or impairs . . . the ability to have an unobstructed view of any of the Parcels." The unobstructed view requirement is, however, limited to defined "obstructions." As we have just explained, a building is not an "obstruction" within the meaning of paragraph 12. Therefore, the unobstructed view requirement does not apply to LGO's building, and this argument fails.

■ ¶ 36 The Trust and Café Rio next claim that LGO breached paragraph 2, entitled "Composition and Use of Common Areas." Referring to the definition of "Common Areas" that immediately precedes it, paragraph 2 provides that "none of such Common Areas shall be changed in any material respect . . . without the prior written consent of all Owners of the Parcels." The Trust and Café Rio contend that because "LGO did not seek permission from other parcel owners prior to beginning construction" of its building, LGO breached paragraph 2. This argument has no merit.

¶ 37 The limitation in paragraph 2 on altering common areas is necessarily confined to those areas defined as "common." That is, owners must obtain the consent of all parcel owners before materially altering *defined* common areas. The common areas are defined to exclude buildings on Parcels 5 and 6.

Therefore, LGO was not required to obtain the consent of all parcel owners before beginning construction of its building on Parcel 5.

¶ 38 Because the Cross–Easement Agreement unambiguously provides that LGO may construct a building on Parcel 5 without limitation as to the building's location, we reverse the district court's grant of summary judgment to the Trust and Café Rio on this issue and order that summary judgment be entered on behalf of LGO.[15]

¶ 39 It necessarily follows from our holding that the district court erred in issuing the preliminary injunction and the restoration order based on its interpretation of the Cross–Easement Agreement. LGO seeks damages, and we remand for the district court to determine whether LGO suffered compensable damages related to the preliminary injunction and the restoration order, and, if so, the amount of such damages.

## II. THE DISTRICT COURT ERRED IN RULING THAT LGO IS JUDICIALLY ESTOPPED FROM CHALLENGING CAFÉ RIO'S PARKING RIGHTS ON PARCEL 5

■ ¶ 40 LGO next argues that the district court erred in ruling that "LGO is judicially estopped from challenging Café Rio's [parking] rights under the Settlement Agreement." Based on its holding, the court did not reach LGO's claim that, because the Café Rio restaurant is not a party to the Cross–Easement Agreement and "is not located on any Parcel of the Property" that is subject to the Cross–Easement Agreement, it has no rights to park on Parcel 5.[16] LGO also argues that the easement associated with "Parcel 5 is overburdened if it is allowed to be used for the benefit of [the Café Rio restaurant] that is not a beneficiary of the easement under

---

15. Given our holding, it is unnecessary to reach LGO's claim that the district court erred in visiting the parcels. The district court visited the site twice and entered the preliminary injunction based upon the language of the "agreement [between] the parties," as well as its "own observations of the property." We strongly caution district court judges to avoid undertaking their own "off-the-record fact gathering," which may limit the opportunity of parties to "cross-examine, to object to the introduction of the evidence, or to rebut the evidence." *Lillie v. United States*, 953 F.2d 1188, 1191 (10th Cir.1992).

16. LGO cites paragraph 15 of the Cross–Easement Agreement, which provides that "[e]ach and all of the easements . . . contained in this agreement are made for the direct, mutual or reciprocal benefit of *the Owners and occupants of the respective Parcels*" and prohibits the transfer or assignment of the easement rights to any non-owner or non-parcel occupant. (Emphasis added.)

the Cross–Easement Agreement." We hold that LGO is not judicially estopped from challenging Café Rio's parking rights, and we remand for the district court to determine whether parking by Café Rio restaurant customers and employees on Parcel 5 is prohibited under the terms of the Cross–Easement Agreement and whether such parking overburdens the easement if it is allowed merely because Café Rio maintains a district office on Parcel 4.

¶ 41 The Trust and Café Rio claim that because LGO signed the Settlement Agreement, it is judicially estopped from now challenging Café Rio's restaurant customers' and employees' parking rights on Parcel 5. Specifically, the Trust and Café Rio point to the paragraph in the Settlement Agreement providing that each parcel "shall have appurtenant thereto and be benefitted by a nonexclusive easement for the parking of motor vehicles ... for the customers, invitees and employees of all business and occupants of the buildings ... on any of the Parcels." The Trust and Café Rio interpret this provision to conclusively establish the rights of Café Rio's restaurant customers and employees to park on Parcel 5. They claim that LGO is judicially estopped from denying these rights.

¶ 42 "Under judicial estoppel, a person may not, to the prejudice of another person, deny any position taken in a prior judicial proceeding between the same persons or their privies involving the same subject matter, if such prior position was successfully maintained." [17]

¶ 43 Judicial estoppel is inapplicable in this case, however, because pursuant to the language of the Settlement Agreement, the parties explicitly reserved the right to litigate the terms of the Cross–Easement Agreement. In the paragraph of the Settlement Agreement entitled "Reservation of Rights," Café Rio and LGO agreed that "no party is waiving any right, claim, or defense it has,

nor making any admission with respect to the interpretation or meaning of the [Cross–Easement Agreement.]" Thus, the Settlement Agreement merely stayed the litigation, with both parties retaining all future rights to litigate. This conclusion is further reinforced by the fact that the parties agreed that the case would be dismissed without prejudice, and it was.

¶ 44 Regarding the promises made by each party in the Settlement Agreement, those promises applied only to the time between the execution of the Settlement Agreement and the commencement of any future litigation.[18] Thus, the promises cannot be construed as permanently binding, and judicial estoppel simply does not apply.

¶ 45 The district court erred in ruling that LGO was judicially estopped from challenging Café Rio's rights to park on Parcel 5. We remand for a determination of whether parking by Café Rio's restaurant customers and employees on Parcel 5 is prohibited under the terms of the Cross–Easement Agreement and whether such parking overburdens the easement if it is allowed merely because Café Rio maintains a district office on Parcel 4.

## III. THE DISTRICT COURT ERRED IN GRANTING ATTORNEY FEES, COSTS, AND INTEREST TO THE TRUST AND ATTORNEY FEES AND COSTS TO CAFÉ RIO

¶ 46 Based on our conclusion that the district court erred in granting summary judgment to the Trust and Café Rio on the issue of LGO's right to construct a building on Parcel 5, and our conclusion that LGO is not judicially estopped from challenging Café Rio's rights to park on Parcel 5, we reverse the grant of attorney fees, costs, and interest to the Trust, and the grant of attorney fees and costs to Café Rio. We note that LGO is entitled to pursue attorney fees and costs related to the issue of its right to construct a building on Parcel 5.[19]

17. *Nebeker v. State Tax Comm'n*, 2001 UT 74, ¶ 26, 34 P.3d 180 (internal quotation marks omitted).

18. For example, LGO agreed not to tow any of Café Rio's customers' cars, and Café Rio agreed not to park on the drive strip or dirt pad on Parcel 5.

19. Paragraph 19 of the Cross–Easement Agreement provides that "[i]f any action is brought ... to enforce or interpret any of the ... provisions [of the Cross–Easement Agreement], ... the party prevailing in such action shall be entitled to recover from the unsuccessful party reasonable attorney fees (including those incurred in connection with any appeal)."

## CONCLUSION

¶ 47 We reverse the district court's grant of summary judgment to the Trust and Café Rio. First, we hold that the Cross–Easement Agreement unambiguously allows LGO to construct a building without limitation on where that building may be placed on Parcel 5 and order that summary judgment be entered on behalf of LGO. Second, we hold that LGO is not judicially estopped from challenging Café Rio's rights to park on Parcel 5.

¶ 48 Based on these holdings, we reverse the award of attorney fees, costs, and interest to the Trust and the award of attorney fees and costs to Café Rio, and we recognize that LGO is entitled to pursue attorney fees and costs related to the issue of its right to construct a building on Parcel 5. Additionally, we remand for the district court to determine whether LGO suffered compensable damages related to the preliminary injunction and the restoration order, whether parking by Café Rio's restaurant customers and employees on Parcel 5 is prohibited under the terms of the Cross–Easement Agreement, and whether such parking overburdens the easement, if it is allowed merely because Café Rio maintains a district office on Parcel 4.

¶ 49 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Judge HIMONAS concur in Associate Chief Justice DURRANT'S opinion.

¶ 50 Having disqualified himself, Justice NEHRING does not participate herein; District Judge DENO HIMONAS sat.