The **PROMARK GROUP, INC.,** a Colorado corporation formerly known as Component Sales, Inc., and Utah Component Sales, Inc., a Utah corporation, Plaintiffs and Appellants,

v.

**HARRIS CORPORATION,** Defendant and Appellee.

No. 920173–CA.

Court of Appeals of Utah.

Sept. 17, 1993.

---

Raymond A. Hintze (argued), Midvale, for appellants.

Michael E. Blue (argued), Ray, Quinney & Nebeker, Salt Lake City, for appellee.

Before GREENWOOD, JACKSON and RUSSON, JJ.

JACKSON, Judge:

Appellants appeal the district court's grant of a motion for summary judgment on claims arising out of a sales representative agreement. We affirm.

**FACTS**

On August 1, 1986, The ProMark Group, Inc. (ProMark) entered into a sales representation agreement (1986 Agreement) with Harris Corporation under which ProMark would receive commissions for selling Harris Corporation products in Utah, Idaho, Wyoming, Montana, and Colorado. In December 1986, ProMark entered into a sub-representation agreement with Harris Marketing, Inc.[1] to sell Harris Corporation's products. The entity that actually performed as sales representative pursuant to the sub-representation agreement was an entity named Harris/CSI, Inc. ProMark owned 25% of Harris/CSI, Jim Martin, President of ProMark, owned 40% and Peggy Harris owned 35%. Peggy Harris was the president of Harris/CSI and ran the company.

On October 1, 1988, ProMark entered into a new sub-representation agreement with Harris Marketing, Inc. (Peggy Harris)[2] under which Peggy Harris, rather than Harris/CSI would sell Harris Corporation's line of products. ProMark was to receive 20% of the commissions generated by the sale of Harris Corporation's products and Peggy Harris was to receive 80% of the commissions.

Harris Corporation then entered into a sales representative agreement directly with Peggy Harris on March 1, 1989. From this date onward, Harris Corporation paid all commissions to Peggy Harris, rather than ProMark.

On August 1, 1989, ProMark received written notice from Peggy Harris that she was terminating her October 1, 1988, sub-representation agreement with ProMark. ProMark also received a letter from Harris Corporation dated August 22, 1989, stating that Harris Corporation considered its relationship with ProMark to be terminated.

In October 1989, ProMark claimed Peggy Harris had breached her sub-representation agreement with ProMark by signing the

---

1. Harris Marketing, Inc. is an entity unrelated to Harris Corporation. The owner of Harris Marketing, Inc. is Peggy Harris, who also has no relationship to Harris Corporation.

2. To avoid confusion, we will refer to Harris Marketing, Inc. as Peggy Harris.

March 1, 1989, sales representative agreement with Harris Corporation. In the spring of 1990, Peggy Harris paid ProMark $15,000 in full and final settlement of all damages, including lost commissions because of the alleged breach of the subrepresentation agreement. Harris Corporation contributed $7,500 of the settlement amount.

ProMark filed a complaint against Harris Corporation in April 1990, alleging that its 1986 Agreement with Harris Corporation was an exclusive sales agreement and that it was never properly terminated. Accordingly, ProMark alleged damages of lost commissions and lost value of the exclusive sales territory in the amount of $50,000. ProMark subsequently filed an amended complaint arguing in the alternative that if the 1986 Agreement was not exclusive, ProMark was entitled to receive commissions on sales made by any other sales representative in accordance with its 1986 Agreement with Harris Corporation. The record does not show sales by any person or entity other than Peggy Harris.

Harris Corporation filed a motion to dismiss ProMark's claim that the 1986 Agreement was an exclusive contract. The court granted the motion. Harris Corporation then filed a motion for summary judgment, asserting that the 1986 Agreement was effectively terminated by letter, that the most ProMark could recover would be 20% of the commissions generated from March 1, 1989, through the 90–day period following August 22, 1989, and that ProMark had received all it was entitled to pursuant to the settlement with Peggy Harris. The trial court granted the motion for summary judgment and ProMark appeals.

## ISSUES

ProMark alleges the trial court improperly determined that: (1) the 1986 Agreement

was not an exclusive sales agreement; (2) the 1986 Agreement was never properly terminated; and (3) ProMark had already received all the commissions to which it was entitled.

## STANDARD OF REVIEW

We will uphold a summary judgment if there are no genuine issues as to any material fact and if the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c). In determining whether the trial court properly found there were no genuine material issues of fact, we review the facts in the light most favorable to the losing party, while giving no deference to the trial court's legal conclusions. *Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.,* 798 P.2d 738, 743 (Utah 1990).

## ANALYSIS

■ ProMark contends that it does not matter whether the 1986 Agreement is exclusive because ProMark is entitled to commissions on all sales of Harris Corporation products in the territory specified by the 1986 Agreement regardless of who makes the sales. Thus, we do not address the exclusivity argument in ProMark's brief.[3] We now turn to an examination of whether ProMark is entitled to commissions under the 1986 Agreement. The 1986 Agreement states that ProMark "will earn a Commission on (i) our Product sales into the Territory to Customers (other than Distributors) against Orders booked during the term of this Agreement, and (ii) Product resales during the term of this Agreement by our authorized Distributor locations in the Territory." Both parties agree the plain unambiguous language of this provision entitles ProMark to commissions on all Harris Corporation products sold in the covered

**3.** ProMark argues the trial court improperly found the 1986 Agreement was not an exclusive contract. However, at oral argument, counsel for ProMark claimed that it was "purely academic" whether the 1986 Agreement was exclusive because even if it was not exclusive, it provided for commissions to ProMark on all sales of Harris Corporation products in the

specified territory, whether made by ProMark or anyone else. This position that the 1986 Agreement was not exclusive along with our finding that the 1986 Agreement was properly terminated effective November 22, 1989, necessarily dictates a finding that ProMark is not entitled to compensation from Harris Corporation for loss of any alleged "business asset."

territory[4] during the time the 1986 Agreement was in effect. *See Equitable Life & Casualty Ins. Co. v. Ross*, 849 P.2d 1187, 1192 (Utah App.1993).

Concerning the issue of the time period for which ProMark is owed commissions, ProMark claims it is currently earning commissions because Harris Corporation has failed to validly terminate the 1986 Agreement. However, the trial court found the 1986 Agreement was validly terminated as of November 22, 1989. The terms of the 1986 Agreement outline the procedure for terminating the agreement: "Either [ProMark] or [Harris Corporation] may terminate this Agreement for convenience at any time by written notice to the other. [Harris Corporation] may terminate this Agreement for convenience by giving not less' than ninety (90) days prior written notice."

Harris Corporation sent ProMark a letter dated August 22, 1989, stating that Harris Corporation "considers the relationship with [ProMark] terminated completely and irrevocably as of March 21, 1989, for all of the territory previously covered by [ProMark]." ProMark alleges that because the letter fails to give a ninety day notice and attempts to make the termination retroactive, the letter fails to terminate the 1986 Agreement. We find this argument to be without merit. The letter explicitly states Harris Corporation's decision to terminate its relationship with ProMark. Even though the letter attempts to make the termination retroactive, in violation of the terms of the 1986 Agreement, this attempt does not invalidate the termination itself. Rather, it only affects the timing of the effective date of the actual termination.

The trial court found that proper notice of termination was given on August 22, 1989, and determined the 1986 Agreement was effective until November 22, 1989, because the 1986 Agreement required ninety days prior written notice. We agree.

■ Because the 1986 Agreement was effective until November 22, 1989, ProMark is only entitled to commissions as outlined in the 1986 Agreement from March 1, 1989, to November 22, 1989. The 1986 Agreement provides that upon termination ProMark

> will continue to earn full commission on our sales and Distributor resales made prior to expiration of the notice period and eighty (80%) of your then applicable commission rate on sales (but not Distributor resales) made after the notice period based on Orders booked prior to expiration of the notice period and scheduled for shipment within 12 months.

As established by unrebutted evidence, the total commissions paid to Peggy Harris for all Harris Corporation products sold by her from March 1, 1989, through November, 1989, were $66,177. The commissions on sales booked from August 22, 1989, until November 22, 1989, and shipped within 12 months thereafter totalled $4,640.[5] Because ProMark had agreed to 20% of the commission received by Peggy Harris under the sub-representation agreement, the most ProMark could recover from the commissions paid to Peggy Harris is $14,163.

ProMark received $15,000 in its settlement with Peggy Harris. ProMark's Release expressly premised the dollar amount of its settlement on "compensation pursuant to the sub-representation agreement by and between the parties and the subsequent contracting between [Peggy Harris] and Harris [Corporation] and any alleged breach of contract due to that contracting." Again, in interpreting the plain language of

---

**4.** The territory covered in the 1986 Agreement included Utah, Idaho, Wyoming, Montana, and Colorado until December 21, 1988. On that date, Harris Corporation reduced ProMark's territory to Utah, Idaho, and Montana.

**5.** These figures include some additional commissions for territories not covered by the 1986 Agreement. The March 1, 1989, sales representation agreement entered into between Peggy Harris and Harris Corporation covered Utah, Wyoming, Idaho, Montana, and Colorado. Thus, these figures represent more than ProMark was entitled to under the 1986 Agreement. However, Harris Corporation assumed for purposes of its summary judgment motion that ProMark was entitled to 20% of all Peggy Harris received from Harris Corporation during the period in question and no other figures appear in the appeal.

the sub-representation agreement, the trial court correctly determined the settlement amount included the commissions paid to Peggy Harris instead of ProMark for sales during the time from March 1, 1989, to November 22, 1989. Accordingly, ProMark has already received all the commissions to which it was entitled under the 1986 Agreement.

## CONCLUSION

ProMark's 1986 Agreement with Harris Corporation was effectively terminated as of November 22, 1989. Although ProMark was entitled to receive commissions on all sales of Harris Products until November 22, 1989, ProMark previously received all the commissions it was entitled to from its settlement with Peggy Harris. Accordingly, we affirm the trial court's order granting summary judgment in favor of Harris Corporation.

RUSSON, J., concurs.

GREENWOOD, J., concurs in the result.