# United States Court of Appeals
## For the First Circuit

No. 12-1031

MILFORD-BENNINGTON RAILROAD CO.,INC.,

Plaintiff, Appellant,

PETER LEISHMAN,

Plaintiff,

v.

PAN AM RAILWAYS, INC.; BOSTON AND MAINE CORPORATION;
SPRINGFIELD TERMINAL RAILWAY COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Howard, Ripple[*] and Selya
Circuit Judges.

Adam Francois Watkins, with whom Watkins, Bradley & Chen LLP,
Craig S. Donais and Donais Law Offices, PLLC were on brief, for
appellant.
Michael J. Connolly, with whom Kelley A. Jordan-Price and
Hinckley, Allen & Snyder LLP were on brief, for appellees.

[*]Of the Seventh Circuit, sitting by designation.

September 25, 2012

**HOWARD**, **Circuit Judge**.    Milford-Bennington Railroad Company, Inc. ("MBR") appeals an award of summary judgment to Pan Am Railways, Inc.; Boston and Maine Corporation; and Springfield Terminal Railway Company (collectively, "Pan Am") in a dispute arising from Pan Am's actions under a contract to provide MBR with access to Pan Am's railroad tracks.   The district court held that Pan Am did not breach its duty of good faith and fair dealing when it exercised its contractual right to exclude an MBR employee from its trackage for violating a safety rule.   We affirm.

## I. Background

Plaintiff-Appellant MBR hauled stone by rail for its only customer, Granite State Concrete.   Because MBR does not own the necessary trackage, it entered into a contract with Pan Am that permits MBR to operate trains on Pan Am's trackage (the "Agreement").   The Agreement requires MBR to follow Pan Am's rules, which include the Operating Rules of the Northeast Operating Rules Advisory Committee ("NORAC").   If Pan Am determines that an MBR employee has violated its rules, it "shall have the right to exclude [the employee] from the Trackage."

On October 22, 2009, MBR employees Peter Leishman and David Raymond were operating a train on Pan Am's trackage. At the leading end of the train, Leishman operated a control car, which is a caboose modified with safety features including a horn, an emergency brake, and lights.   Behind the control car were ten

hopper cars filled with crushed stone. At the trailing end, Raymond operated a locomotive, which pushed the train from behind. As the train approached a highway crossing, a tractor trailer truck crossed the tracks. Leishman activated the emergency brake, but the train collided with the truck, derailing the control car and one of the hopper cars.

In response to the accident, Pan Am sent Leishman a letter notifying him of an investigative hearing scheduled for November 10, 2009. The letter was dated November 4, and Leishman states that he received it on November 6. Leishman requested a postponement due to his injuries from the collision and so that his counsel could attend the hearing, but Pan Am went forward as scheduled without Leishman or his counsel present. Because no employee of MBR was stationed at the crossing at the time of the accident, Pan Am determined that Leishman had violated NORAC Rule 138(e), "Trains Operating from Other Than The Leading End at a Highway Crossing," which provides:

> Trains being operated from other than the leading end must not enter a highway crossing at grade until on-ground warning is provided by a crew member or other qualified employee, except when it is visually determined that:
>
> . . . .
>
> 2. A designated and qualified employee is stationed at the crossing and has the ability to communicate with trains . . . .

Pan Am did not immediately disclose its determination to Leishman.

When Leishman attempted to return to work on March 17, 2010, a Pan Am dispatcher refused him access to the tracks due to "company policy." Leishman contacted Pan Am's general counsel Robert Burns, who asked Leishman for a meeting to discuss signing a new trackage-rights agreement. Leishman and Burns met on March 19, and on April 8, Burns proposed the terms of a new agreement. The next day, Leishman rejected the proposal. That same day, Pan Am sent Leishman a letter stating that, at the time of the accident, he was "not properly stationed for the backward move through the crossing" and that "it would be the safest course to prevent you personally from operating on [Pan Am] property in the future pursuant to [the Agreement]."

On April 14, Thomas Brugman of the Surface Transportation Board emailed Pan Am to express his concerns regarding the effect of Pan Am's decision on Granite State Concrete and the potential appearance that Pan Am had not given sufficient process to Leishman and MBR. Pan Am then scheduled a supplemental investigative hearing, which Leishman attended. Pan Am again concluded that Leishman had violated its rules.

MBR and Leishman filed a petition in June 2010 against Pan Am in New Hampshire Superior Court. The petition did not lay out specific causes of action, but it sought to enjoin Pan Am from excluding Leishman from its trackage, as well as compensatory damages "in excess of $50,000." In July 2010, Pan Am removed the

case to the United States District Court for the District of New Hampshire on the ground that the ICC Termination Act of 1995 ("ICCTA"), in particular 49 U.S.C. § 10501(b), completely preempted MBR and Leishman's claims. The district court stayed the case when the parties agreed to hold a third investigative hearing. At that hearing, Leishman asserted that he had complied with Rule 138(e) and that Pan Am's interpretation of the rule was incorrect. Once more, Pan Am upheld its original decision.

After the third hearing but before the district court made any substantive rulings, Leishman and MBR filed an amended complaint that listed four causes of action, all described as breaches of the Agreement. Count One alleged that Pan Am breached its covenant of good faith and fair dealing in excluding Leishman because Pan Am had not objected to MBR's practices in the past, and MBR arguably had not violated Rule 138(e). Count Two alleged that Pan Am's hearing process was improper. Count Three claimed that Pan Am unreasonably excluded Leishman because the accident was unavoidable and because Pan Am had filed a report with the Federal Railroad Administration stating that the truck driver was at fault. Count Four claimed that Pan Am misinterpreted Rule 138(e). Pan Am moved to dismiss the amended complaint on the grounds that the ICCTA preempted MBR and Leishman's claims, Leishman was not a party to the Agreement, and Count Four of the amended complaint duplicated Count One. The district court held that the ICCTA did

not preempt MBR and Leishman's claims, but it dismissed Leishman from the action and dismissed Count Four. The district court then held a hearing at which it determined that Leishman had violated Rule 138(e) and that Leishman's interpretation of the rule was "not a plausible one at all."

After the hearing, the only remaining issue before the district court was whether Pan Am's decision to exclude Leishman violated the duty of good faith and fair dealing implicit in the Agreement. Pan Am moved for summary judgment, arguing that because the Agreement gives it the express right to exclude an employee of MBR for violating its rules, the duty of good faith and fair dealing could not prohibit it from excluding Leishman. The district court granted Pan Am's motion, and MBR timely appealed.

## II. Analysis

### A. Jurisdiction

In every case, we are required to satisfy ourselves of jurisdiction. García-Velázquez v. Frito Lay Snacks Caribbean, 358 F.3d 6, 8 (1st Cir. 2004). Here, the record suggests a possible defect in the district court's jurisdiction. Although MBR and Leishman's state-court petition raised no issues of federal law, Pan Am removed this action based on federal-question jurisdiction -- specifically, complete preemption of MBR and Leishman's claims by the ICCTA. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003) ("[A] state claim may be removed to

federal court . . . when a federal statute wholly displaces the state-law cause of action through complete pre-emption.").  When the district court held that the ICCTA did not completely preempt MBR and Leishman's claims, the basis for federal jurisdiction became subject to question.  See Fayard v. Ne. Vehicle Servs., LLC, 533 F.3d 42, 45, 49 (1st Cir. 2008) (in the absence of complete preemption, district court required to remand state-law claims); See also Martin H. Redish, 16 Moore's Federal Practice - Civil § 106.66[1] (3d ed. Supp. 2012) (listing cases from seven courts of appeals holding that a district court may not exercise supplemental jurisdiction over state-law claims without original jurisdiction over the action).

On appeal, the parties claim that the district court also had diversity jurisdiction under 28 U.S.C. § 1332, which grants the district courts original jurisdiction over civil actions between citizens of different states in which the amount in controversy exceeds $75,000.  Here, the plaintiffs and defendants are citizens of different states,[1] but the original petition filed in state court alleged damages "in excess of $50,000."  Thus, it is not facially apparent whether the plaintiffs satisfied

---

[1] Leishman is a citizen of New Hampshire.  MBR is a New Hampshire corporation with a principal place of business in New Hampshire.  Pan Am Railways, Inc. and Boston and Maine Corporation are Delaware corporations with principal places of business in Massachusetts.  Springfield Terminal Railway Company is a Vermont corporation with a principal place of business in Massachusetts.

the amount-in-controversy requirement. Because the party invoking federal jurisdiction bears the burden of demonstrating that the court has subject-matter jurisdiction over the case, Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009), Pan Am must show that the amount in controversy exceeds $75,000. Although we have not decided how heavy a burden the removing party must bear in this precise situation, we have decided that a party removing a case under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, must show a "reasonable probability" that the jurisdictional threshold is satisfied. Amoche, 556 F.3d at 48-49.

Whatever the appropriate burden, Pan Am has satisfied it. On appeal, counsel for MBR told this court that after the district court ruled that MBR's claims were not preempted, the court held a conference call during which the parties agreed that MBR's claims satisfied the amount-in-controversy requirement. Moreover, shortly after removal, MBR filed a motion for a preliminary injunction stating that "[t]he current economic impact to [MBR] and the State of New Hampshire are, at present, approximately $300,000." Seeing nothing in the record that belies the parties' agreement regarding the amount in controversy, we conclude that the district court had jurisdiction over this action.

## B. Good Faith

The only issue before us is whether Pan Am's decision to exclude Leishman from its trackage violated the duty of good faith and fair dealing implicit in the Agreement.[2]  The district court granted summary judgment to Pan Am, holding that the Agreement "plainly gives it the right to act as it did, regardless of its motive for doing so.  Under the circumstances, MBR cannot rely on the duty of good faith and fair dealing to restore a right that it bargained away by agreeing to the [Agreement]." Milford-Bennington R.R. Co. v. Pan Am Rys., Inc., No. 10-cv-00264-PB, 2011 WL 6300923, at *6 (D.N.H. Dec. 16, 2011).  We review the district court's grant of summary judgment de novo.  Hunt v. Golden Rule Ins. Co., 638 F.3d 83, 86 (1st Cir. 2011).

New Hampshire law, which governs the Agreement, requires that parties to an agreement "act in good faith and fairly with one another." Livingston v. 18 Mile Point Drive, Ltd., 972 A.2d 1001, 1005 (N.H. 2009).  The good-faith obligation limits the parties' discretion in contractual performance, id. at 1006, by "excluding behavior inconsistent with common standards of decency, fairness, and reasonableness, and with the parties' agreed-upon common

---

[2] MBR argues on appeal that Pan Am waived its right to enforce Rule 138(e) because it had been aware for years that MBR routinely pushed its trains through highway crossings without an employee stationed at the crossing.  Because MBR failed to make this argument to the district court in its opposition to Pan Am's motion for summary judgment, the argument is waived.  See Sony BMG Music Entm't v. Tenenbaum, 660 F.3d 487, 496 (1st Cir. 2011).

-10-

purposes and justified expectations." <u>Centronics Corp.</u> v. <u>Genicom Corp.</u>, 562 A.2d 187, 191 (N.H. 1989) (Souter, J.). Surveying its own cases, the New Hampshire Supreme Court has explained that

> under an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

<u>Id.</u> at 193. Put differently, "the concept of good faith in performance addresses the particular problem raised by a promise subject to such a degree of discretion that its practical benefit could seemingly be withheld." <u>Id.</u>

In <u>Centronics</u>, the New Hampshire Supreme Court listed four questions that must be answered in the affirmative to state a claim for breach of the duty of good faith and fair dealing. <u>Id.</u> MBR and Pan Am dispute the answers to two of these four questions:

> 1. Does the agreement ostensibly allow to or confer upon the defendant a degree of discretion in performance tantamount to a power to deprive the plaintiff of a substantial proportion of the agreement's value?
>
> . . . .
>
> 3. Assuming an intent to be bound, has the defendant's exercise of discretion exceeded the limits of reasonableness?

-11-

<u>Id.</u>[3]

As to the first question, MBR points out that the Agreement gives Pan Am the "right to exclude from the Trackage any employee of MBR" who violates Pan Am's rules, without any limitation on the length of the exclusion and without regard to the severity of the violation. MBR has only two employees, both of whom are necessary to operate MBR's trains. As a result, MBR argues, Pan Am can effectively deprive MBR of the Agreement's value by excluding an MBR employee for life, even for trivial violations of Pan Am's rules.

Pan Am responds that the Agreement does not give MBR the right to have a particular employee operate a train after violating Pan Am's rules, so Pan Am does not deprive MBR of the Agreement's value by excluding an MBR employee from Pan Am's trackage. When it executed the Agreement, MBR was aware of Pan Am's right to exclude its employees, and it could have prepared for the scenario in which Pan Am exercised that right.

We need not decide whether Pan Am's right to exclude MBR's employees confers "a degree of discretion in performance tantamount to a power to deprive the plaintiff of a substantial proportion of the agreement's value," <u>id.</u>, 562 A.2d at 193, because

---

[3] The other two questions are whether the parties intended to create an enforceable contract and whether the defendant's actions caused the plaintiff's damages. <u>Centronics</u>, 562 A.2d at 193-94. The parties agree that the answer to both questions is yes.

-12-

we are satisfied that even if Pan Am had such discretion when deciding whether to exclude MBR's employees, its exercise of that discretion was reasonable, see id. ("[H]as the defendant's exercise of discretion exceeded the limits of reasonableness?").

Following three hearings by Pan Am and one of its own, the district court ruled that Leishman violated NORAC Rule 138(e) by failing to station an employee at the crossing while MBR's train crossed the highway. Moreover, Leishman's violation was followed by the very type of accident the rule presumably was intended to prevent: a collision between a train and a vehicle at an unguarded crossing. MBR has chosen not to appeal this ruling, and we will not revisit it here. In light of Leishman's violation of a safety rule and the accident that followed, we conclude that Pan Am's decision to exclude Leishman from its trackage did not "exceed[] the limits of reasonableness." Id. at 193.

Although Pan Am had an objective basis for its decision, MBR urges us to look to Pan Am's subjective intent, which it claims was to force MBR into an unfavorable contract or shut down MBR's operations. MBR cites a number of cases in which the court warned parties against violating the duty of good faith by acting on subterfuge or illicit motives.[4] Most of these cases follow a

---

[4] These cases include Olbres v. Hampton Coop. Bank, 698 A.2d 1239, 1243 (N.H. 1997); Bayview Condominium Ass'n v. Ohanian, No. 08-C-0129, 2008 WL 7467082 (N.H. Super. Ct. Oct. 24, 2008); McAdams v. Massachusetts Mutual Life Insurance Co., 391 F.3d 287, 302 (1st Cir. 2004) (applying Massachusetts law); Original Great

-13-

common pattern: a contract gives a party the right to take action if a certain condition is met, the party allegedly determines in bad faith that the condition is met, and the party takes action accordingly. E.g., Olbres v. Hampton Coop. Bank, 698 A.2d 1239, 1243 (N.H. 1997) (bank's right to set off customer's deposits against its liabilities). This case does not conform to that pattern, however, because Pan Am's decision that Leishman violated Rule 138(e) is beyond dispute. Pan Am had an unassailably valid reason to exclude Leishman, so its alleged ulterior motives are irrelevant. See Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp., 223 F.3d 585, 589 (7th Cir. 2000) (Posner, C.J.) ("If a party has a legal right to terminate the contract . . . its motive for exercising that right is irrelevant.").

Leishman and MBR's actions after the accident reinforce our conclusion. At Pan Am's third hearing and before the district court, Leishman and MBR argued that Leishman had not violated Rule 138(e), despite the rule's clear requirement that MBR station an employee at the crossing. Although MBR chose not to appeal the district court's ruling that Leishman violated Rule 138(e), it continues to refer in its appeal brief to the "purported violation," which it describes as trivial. We would be hard-

American Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd., 970 F.2d 273, 280 (7th Cir. 1992) (Posner, J.); and Carlson Machine Tools, Inc. v. American Tool, Inc., 678 F.2d 1253, 1262 (5th Cir. 1982).

-14-

pressed to say that Pan Am's decision to exclude Leishman is "inconsistent with common standards of decency, fairness, and reasonableness," Centronics, 562 A.2d at 191, when MBR has not challenged the finding of a violation but, nevertheless, neither it nor Leishman accepts responsibility for the violation despite a spate of adverse rulings over the course of more than two years of litigation. Therefore, even if Pan Am was bound by a duty of good faith and fair dealing when exercising its right to exclude Leishman, Pan Am has not breached that duty.

### III. Conclusion

We **affirm** the district court's judgment.