*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2013 UT 12**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STEPHEN A. OSGUTHORPE and
D.A. OSGUTHORPE FAMILY PARTNERSHIP,
*Plaintiffs and Appellants,*

*v.*

WOLF MOUNTAIN RESORTS, L.C.,
*Defendant, Appellee, and Cross-Appellant,*

*v.*

ASC UTAH, INC., dba THE CANYONS; AMERICAN SKIING COMPANY;
LESLIE B. OTTEN; and John Does I-XX,
*Defendants and Appellees.*

Nos. 20100928
Filed March 5, 2013

Third District, Silver Summit Dep't
Honorable Robert K. Hilder
No. 060500297

Attorneys:

David W. Scofield, Sandy, for appellants

Joseph E. Wrona, Todd D. Wakefield, Park City,
for appellee and cross-appellant

John R. Lund, Kara L. Pettit, John P. Ashton, Clark K. Taylor,
Salt Lake City, for appellees

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE LEE and JUDGE ORME joined.

Having recused herself, Justice Parrish does not participate
herein, Court of Appeals Judge Orme sat.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1    The D.A. Osguthorpe Family Partnership (Osguthorpe)
appeals the district court's denial of its motion to compel arbitration
of claims between ASC Utah, Inc., (ASCU) and Wolf Mountain Re-
sorts, L.C. (Wolf Mountain). Osguthorpe also asserts that its due
process rights were violated by the district court. We affirm.

## BACKGROUND[1]

¶2    The claims for which Osguthorpe seeks to compel arbitration arise from two agreements: the 1997 Ground Lease Agreement between ASCU and Wolf Mountain (Ground Lease) and the 1999 Amended and Restated Development Agreement for the Canyons Specially Planned Area (SPA Agreement). The SPA Agreement has thirty-six signatories, including ASCU, Wolf Mountain, Osguthorpe, and Summit County (County). In the SPA Agreement, the parties agreed to take specified steps to develop the Canyons Resort in exchange for the County's approval of the projects, assistance in obtaining permits from other governmental agencies, and other support.

¶3    In 2006, ASCU and Wolf Mountain began litigating claims involving both the Ground Lease and the SPA Agreement. *See ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.* (*Wolf Mountain II*), 2010 UT 65, ¶ 4, 245 P.3d 184. Shortly thereafter, in 2006 and 2007, Osguthorpe sued ASCU and Wolf Mountain separately, alleging that each party had breached a land-lease agreement distinct from the Ground Lease or the SPA Agreement. In late 2007, ASCU moved to consolidate Osguthorpe's separate actions into ASCU's litigation with Wolf Mountain. The district court granted ASCU's motion over Osguthorpe's opposition.

¶4    On July 30, 2009, the County issued a notice of default against Osguthorpe, ASCU, Wolf Mountain, and several other parties to the SPA Agreement. Nearly a year later, on June 28, 2010, the district court issued an order granting leave to the parties to file supplemental pleadings related to the Ground Lease under rule 15(d) of the Utah Rules of Civil Procedure. Osguthorpe filed a supplemental pleading alleging four new causes of action, including one related to liability for the default declared by the County under the SPA Agreement. The district court refused to allow Osguthorpe's claims because they were entirely new claims, not supplemental claims invited by the court pursuant to rule 15(d). Shortly thereafter, Wolf Mountain moved to disqualify the district judge, and the judge voluntarily recused himself. The judge to whom the case was reas-

---

[1] For a more detailed account of this case's factual and procedural background, see *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.* (*Wolf Mountain II*), 2010 UT 65, ¶¶ 2–9, 245 P.3d 184 and *Osguthorpe v. Wolf Mountain Resorts, L.C.* (*Wolf Mountain I*), 2010 UT 29, ¶¶ 1–3, 232 P.3d 999.

signed vacated the previous judge's order and allowed Osguthorpe to bring the new claims into the litigation.

¶5     In September 2010, Osguthorpe moved to compel arbitration of all the claims related to the SPA Agreement (SPA claims), including the claims between ASCU and Wolf Mountain, to which Osguthorpe was not a party. The district court scheduled a hearing on the motion for November 24, 2010. On November 19, this court issued *Wolf Mountain II*, in which we held that Wolf Mountain had "waived any potential contractual right to arbitrate" its SPA claims. 2010 UT 65, ¶ 39. Based on that opinion, the district court canceled the hearing on Osguthorpe's motion and held that the SPA claims between ASCU and Wolf Mountain were not arbitrable. As to Osguthorpe's own SPA claims, the district court held that Osguthorpe could continue to litigate them in the present case or pursue separate resolution through arbitration.

¶6     Osguthorpe appealed the district court's denial of its motion to compel arbitration.[2] Several weeks later, on the eve of trial, Osguthorpe withdrew its SPA claims from the case. Thus, the appeal before us involves only Osguthorpe's motion to compel arbitration of the SPA claims between ASCU and Wolf Mountain, to which Osguthorpe is not a party. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶7     We review the interpretation of a contract for correctness. *Meadow Valley Contractors, Inc. v. State Dept. of Transp.*, 2011 UT 35, ¶ 24, 266 P.3d 671. Although the denial of a motion to compel arbitration presents a mixed question of fact and law, "when a district court denies a motion to compel arbitration based on documentary evidence alone," we afford no deference to the district court's decision. *Wolf Mountain II*, 2010 UT 65, ¶ 11, 245 P.3d 184. Finally, "[c]onstitutional issues, including questions regarding due process, are questions of law that we review for correctness." *Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177.

## ANALYSIS

¶8     Osguthorpe argues that, as a party to the SPA Agreement, it is entitled to compel arbitration of the SPA claims between ASCU and Wolf Mountain. Osguthorpe also contends that the district court violated its right to due process by ruling on the motion to compel

---

[2] Osguthorpe also petitioned this court to stay the litigation and to disqualify the district judge. We denied these petitions.

arbitration without giving Osguthorpe an opportunity to be heard on what effect, if any, our decision in *Wolf Mountain II* should have on the motion's disposition. We disagree with Osguthorpe on both issues.

## I. THE SPA AGREEMENT DOES NOT PERMIT OSGUTHORPE TO COMPEL ARBITRATION OF CLAIMS BETWEEN ASCU AND WOLF MOUNTAIN

¶9 Upon close examination of the default and arbitration provisions of the SPA Agreement, we conclude that the SPA disputes between ASCU and Wolf Mountain are not within the scope of the arbitration provision and that even if they were, Osguthorpe would not have a right to compel arbitration of claims between two other parties.

¶10 "The underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract." *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 17, 54 P.3d 1139. To ascertain the parties' intentions, we look to the plain meaning of the contractual language, *Café Rio, Inc. v. Larkin-Gifford-Overton, LLC*, 2009 UT 27, ¶ 25, 207 P.3d 1235, and "we consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none," *Selvig v. Blockbuster Enters., LC*, 2011 UT 39, ¶ 23, 266 P.3d 691 (alteration in original) (internal quotation marks omitted).

¶11 The SPA Agreement contains detailed default provisions, which on their face apply only to obligations running to the County. Subsection 5.1.2 provides:

> Within ten (10) days after the occurrence of a default . . . the County shall give the Defaulting Party . . . written notice specifying the nature of the alleged default and, when appropriate, the manner in which the default must be satisfactorily cured. The Defaulting Party shall have sixty (60) days after receipt of written notice to cure the default.

Subsection 5.1.3 provides that in the event of an uncured default, the County may sue the defaulting party for specific performance or, if the default is a "major default," terminate the SPA Agreement. Under the plain language of the default provisions, the County is the only party that can declare a default and the only party that can sue for specific performance or terminate the agreement.

¶12    Subsection 5.8.1 of the SPA Agreement contains the following arbitration provision:

> *In the event that the default mechanism contained herein shall not sufficiently resolve a dispute under this Amended Agreement*, then every such continuing dispute, difference, and disagreement shall be referred to a single arbitrator agreed upon by the parties . . . and such dispute, difference, or disagreement shall be resolved by the binding decision of the arbitrator.

(Emphasis added.) The arbitration provision limits its scope to disputes that "the default mechanism" referenced above has failed to resolve. The phrase "every such continuing dispute" thus indicates that only disputes to which the default mechanism has actually (whether successfully or not) been applied fall within the scope of the arbitration provision. Because the default mechanism can only be exercised by the County, the County will necessarily be a party to "every such continuing dispute." Thus, Osguthorpe is incorrect when it asserts that the arbitration provision applies to all disputes between any parties to the SPA Agreement.

¶13    A comparison of the arbitration provision with the attorney fee provision in subsection 5.8.6 of the SPA Agreement reinforces our interpretation. The attorney fee provision states:

> Should any party hereto employ an attorney . . . *for any reasons or in any legal proceeding whatsoever*, including insolvency, bankruptcy, arbitration, declaratory relief or other litigation, including appeals or re-hearings . . . the prevailing party shall be entitled to receive from the other party thereto reimbursement for all attorney's fees and all costs and expenses.

(Emphasis added.) This provision bolsters our analysis in two ways. First, it suggests that not all disputes between parties to the SPA Agreement are governed by the arbitration provision. Second, its expansive language stands in contrast to the limiting language of the arbitration provision. The attorney fee provision applies to "any legal proceeding" involving "any party" to the SPA Agreement. In contrast, the arbitration provision applies only "[i]n the event that the default mechanism . . . shall not sufficiently resolve a dispute" and applies only to "such continuing dispute[s]" with the County.

¶14    Here, the SPA claims for which Osguthorpe is attempting to compel arbitration are not "continuing dispute[s]" with the County that the default mechanism has failed to resolve. The County

5

is not a party to this appeal or to any of the litigation leading to this appeal, and the default mechanism has not been (and cannot be) invoked as to these claims. Although the claims involve liability for the default declared by the County, they are distinct from the parties' disputes with the County. Thus, these SPA claims do not fall within the scope of the arbitration provision.

¶15    Even if the SPA claims were arbitrable, Osguthorpe would not have a right to invoke the arbitration provision because it is not a party to the claims between ASCU and Wolf Mountain. The arbitration provision directs that arbitrable disputes "be referred to a single arbitrator agreed upon by the parties." The word "parties" refers not to all thirty-six parties to the contract but rather to the parties to the particular dispute. To interpret the contract otherwise would lead to the absurd result of requiring all thirty-six signatories to agree on an arbitrator to hear a dispute in which most of the signatories have no interest. Nothing in the arbitration provision entitles signatories to the SPA Agreement that are not party to a dispute to compel that dispute into arbitration.

¶16    We conclude that the SPA claims between ASCU and Wolf Mountain are not arbitrable because they are not "continuing dispute[s]" with the County that the default mechanism has failed to resolve.[3] And even if these claims were arbitrable, Osguthorpe, as a non-party to the disputes, would have no right under the SPA Agreement to compel their arbitration.

## II. OSGUTHORPE'S DUE PROCESS RIGHTS WERE NOT VIOLATED

¶17    Osguthorpe also argues that the district court violated its right to due process by denying its motion to compel arbitration before it could be heard on what effect, if any, our opinion in *Wolf Mountain II* had on the motion. We disagree.

---

[3] Our analysis in *Wolf Mountain II* was premised on the unexamined assumption that the SPA Agreement gave Wolf Mountain a right to arbitrate its disputes with ASCU. In that appeal, the applicability of the arbitration provision was not disputed and therefore not briefed or argued to us. Accordingly, we did not analyze or interpret subsection 5.8.1, as acknowledged in the cautious phrasing of our holding: "Wolf Mountain waived *any potential* contractual right to arbitrate . . . ." *Wolf Mountain II*, 2010 UT 65, ¶ 39, 245 P.3d 184 (emphasis added). Although *Wolf Mountain II* could have been resolved on contract interpretation grounds rather than on waiver grounds, the opinion remains sound.

¶18    After we issued *Wolf Mountain II*, the district court cancelled the hearing it had scheduled on Osguthorpe's motion to compel arbitration, and denied the motion. In its written order, the court correctly explained that under rule 7(e) of the Utah Rules of Civil Procedure a court can deny hearings on dispositive motions if "the court finds that . . . the issue has been authoritatively decided." Here, the district court indeed found "that the arbitration issue in this case ha[d] been . . . authoritatively decided" by our opinion in *Wolf Mountain II*. We agree.

¶19    We have held that "due process requires that those with an interest in a proceeding be given notice and an opportunity to be heard in a meaningful manner before their interests are adjudicated by a court." *Salt Lake Legal Defender Ass'n v. Atherton*, 2011 UT 58, ¶ 2, 267 P.3d 227. Here, Osguthorpe fully briefed the matter to the district court, and the court noted in its written order that it "read all of the briefing." The district court complied with rule 7(e) in ruling on the motion without a hearing, *see supra* ¶ 18, and Osguthorpe has not argued that rule 7(e) is constitutionally inadequate. Nor has Osguthorpe provided any authority or argument for the notion that if new controlling precedent is handed down after a matter is briefed but before it is ruled on, the district court is required to order supplemental briefing. Therefore, we hold that Osguthorpe's due process rights were not violated.

## CONCLUSION

¶20    The disputes for which Osguthorpe seeks to compel arbitration are not subject to the SPA Agreement's arbitration provision. Furthermore, as a non-party to the disputes, Osguthorpe has no contractual right to compel their arbitration. We hold that the district court was correct in denying Osguthorpe's motion to compel arbitration, and that the district court did not violate Osguthorpe's due process rights. Affirmed.