2014 UT App 194

# THE UTAH COURT OF APPEALS

LOAD ZONE MARKETING AND MANAGEMENT, LLC,
Plaintiff and Appellant,
*v.*

C. DENNIS CLARK,
Defendant and Appellee.

Opinion
No. 20130093-CA
Filed August 14, 2014

First District Court, Logan Department
The Honorable Clint S. Judkins
No. 110102378

Judson T. Pitts, Attorney for Appellant

James T. Burton and Joshua S. Rupp, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE JOHN A. PEARCE and SENIOR JUDGE PAMELA T. GREENWOOD concurred.[1]

ROTH, Judge:

¶1      Load Zone Marketing and Management, LLC (Load Zone) sued C. Dennis Clark for specific performance of a real estate purchase contract (the REPC). The REPC implemented a common feature of standard real estate purchase contracts in

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

Utah, providing each party the right to cancel in the event Clark was unable to obtain a mortgage loan before a specified date. Clark's lender did not approve his loan application before the deadline, and Clark canceled the agreement. Load Zone argues that even though Clark was unable to get a loan before the deadline, his cancellation was ineffective because he cancelled the contract for an improper reason and his cancellation notice was both untimely and inconsistent with the terms of the REPC. The district court granted summary judgment in Clark's favor, concluding that he gave adequate notice and that because he had a valid reason to terminate the contract, his motives for doing so were irrelevant. We affirm the district court's ruling.

## BACKGROUND

¶2    In August 2010, Clark entered into the REPC with Load Zone to purchase property in northern Utah for $1.128 million, $846,000 of which was to be financed by a loan. Clark deposited $3,000 in earnest money. The REPC was a standard-form real-estate purchase contract in which the parties had selected the option invoking the "Financing Condition": "[Clark]'s obligation to purchase the property . . . [X] IS . . . conditioned upon [Clark] obtaining the Loan referenced in Section 2(b)." According to the financing condition, Clark agreed to obtain financing by September 10, 2010, the Financing and Appraisal Deadline (the financing deadline), and the parties agreed to close the transaction within four days of September 20, 2010, the settlement deadline. The Financing Condition required Clark "to work diligently and in good faith to obtain the Loan" and allowed either party the option to cancel the REPC if Clark was unable to secure a loan by the financing deadline. Should the cancellation option be exercised, Clark's earnest money deposit was to be released to Load Zone, who "agree[d] to accept as [its]

exclusive remedy, the Earnest Money Deposit . . . as liquidated damages."[2]

¶3     There is no dispute that Clark "work[ed] diligently and in good faith to obtain the Loan" as the Financing Condition required, but his lender had not yet made a decision on Clark's loan application when the financing deadline passed. The settlement deadline also went by without any action from Clark's lender, and the REPC did not close. One month later, Load Zone sent Clark a proposed addendum to the REPC that would have extended the settlement deadline until October 22, 2010, but Clark did not sign it. The lender finally approved Clark's loan "[o]n the evening of October 21st or the morning of October 22nd," within days after Load Zone had asked Clark to

---

2. The cancellation provision is set forth at section 8.3(b) of the REPC:

> (b) Buyer's Right to Cancel After the Financing & Appraisal Deadline. If after the expiration of the Financing and Appraisal Deadline . . . [Clark] fails to obtain the Loan, meaning that the proceeds of the Loan have not been delivered by the Lender to [Load Zone] or to the escrow/closing office [within four days of the settlement deadline], then [Clark] or [Load Zone] may cancel the REPC by providing written notice to the other party; whereupon the Earnest Money Deposit . . . shall be released to [Load Zone] without the requirement of further authorization from [Clark]. In the event of such cancellation, [Load Zone] agrees to accept as [its] exclusive remedy, the Earnest Money Deposit . . . as liquidated damages. [Clark] and [Load Zone] agree that liquidated damages would be difficult and impractical to calculate, and the Earnest Money Deposit . . . is a fair and reasonable estimate of [Load Zone]'s damages in the event [Clark] fails to obtain the Loan.

extend the settlement deadline, but Clark decided not to proceed.

¶4 Rather, on October 22, Clark sent Load Zone a letter cancelling the REPC. He cited an unspecified unfavorable "market condition" and requested the return of his earnest money, but his letter did not mention the delayed loan approval or the financing condition.

¶5 Load Zone filed a breach of contract action seeking specific performance of the REPC. It argued that Clark breached the contract by failing to close the transaction and that his cancellation notice was ineffective because it was untimely and sent in bad faith. Clark stated in a deposition that he withdrew from the contract for two reasons—higher than anticipated closing costs on the loan and the fact that a neighboring property had sold for a little more than half the amount he had offered in the REPC.

¶6 The parties filed cross-motions for summary judgment and Clark prevailed. The district court concluded that "the REPC clearly sets forth that if financing was not obtained by the financing . . . deadline, either party had the option of cancelling the contract by sending written notice of cancellation." Because there was no dispute that Clark diligently sought financing "until at least . . . ten days after the financing" deadline and that the parties never agreed to extend the financing deadline, the court determined that "the financing condition was not met, and [Clark] was entitled to cancel the REPC." The court concluded that Clark's cancellation notice was effective but that Load Zone was entitled to retain Clark's earnest money as liquidated damages. Load Zone appeals.

ISSUES AND STANDARD OF REVIEW

¶7 Load Zone argues that the district court erred in granting summary judgment, because the REPC requires that any

cancellation be sent in good faith prior to the settlement deadline. We review "a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness," viewing "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted). The interpretation of a contract is also a question of law that we review for correctness. *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 11, 210 P.3d 263.

ANALYSIS

¶8      We begin by examining the pertinent terms of the REPC, mindful that where "the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language." *Café Rio, Inc. v. Larkin-Gifford-Overton, LLC*, 2009 UT 27, ¶ 25, 207 P.3d 1235. We also read "each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none." *Glenn v. Reese*, 2009 UT 80, ¶ 10, 225 P.3d 185 (omission in original) (citations and internal quotation marks omitted).

¶9      Paragraph 8.3 is entitled "Financing Condition." It provides that Clark's "obligation to purchase the property . . . [X] IS . . . conditioned upon [Clark] obtaining" an $846,000 loan, and it requires him "to work diligently and in good faith" to do so. Paragraph 8.3(a) allows Clark the option to cancel the contract and recover his earnest money if he "is not satisfied with the terms and conditions of the Loan." To invoke this option, Clark must provide "written notice to [Load Zone] no later than" the financing deadline of September 10, 2010. Once the financing deadline has passed, paragraph 8.3(b) permits cancellation by either party, but only if Clark "fails to obtain the Loan, meaning that the proceeds of the Loan have not been delivered by the Lender to [Load Zone]" as required by

paragraph 3.5, i.e., "within four calendar days after" the settlement deadline of September 20, 2010 (the closing deadline). While cancellation by either party under these circumstances results in automatic forfeiture of Clark's earnest money deposit, paragraph 8.3(b) provides that "[i]n the event of such cancellation," retention of the earnest money is Load Zone's "exclusive remedy."

¶10 Unlike the right to cancel under paragraph 8.3(a), which specifies that it must be invoked before the financing deadline, paragraph 8.3(b) does not restrict either party's right to cancel to a specific time frame after the closing deadline passes. If Clark simply defaults on his obligations under the REPC, Load Zone's remedy is not limited to retention of the earnest money; rather, paragraph 16.1 gives Load Zone three options: cancel the contract and keep the earnest money "as liquidated damages," hold the earnest money in trust and sue Clark for specific performance, or return the earnest money and "pursue any other remedies available at law." Finally, the REPC requires the parties to agree in writing if they wish to extend deadlines or alter any terms in the agreement.

¶11 There is no dispute "that the parties entered into the REPC" and that Clark "diligently attempted to get a loan until at least September 20, 2010, . . . which was ten days after the financing . . . deadline."[3] And neither party disputes that Clark

3. In Load Zone's cross-motion for summary judgment, it asserted that "at some point . . . after [Clark] learned that he could purchase the nearly identical house for hundreds of thousands of dollars cheaper, he stopped seeking the Loan in good faith." In its response to Clark's statement of undisputed facts, Load Zone requested leave to depose "both the Loan officer at" Clark's bank "and Clark's real estate agent "to determine precisely when [Clark] learned of the other property." The district court's ruling did not address this request, however, and on appeal, Load Zone has not argued that there was a
(continued . . .)

failed to obtain a loan by the financing deadline, that the parties did not agree to extend the settlement deadline, or that Clark sent Load Zone a written notice of cancellation on October 22. Thus, as long as Clark's cancellation notice was timely and properly invoked his right to cancel, Load Zone has already obtained all the relief to which it is entitled under the REPC's financing condition—Clark's $3,000 earnest money deposit—and the broader remedies of paragraph 16.1 are not available.

¶12    Load Zone argues that Clark's cancellation notice was ineffective for three reasons: (1) the REPC requires that any cancellation be sent prior to the settlement deadline; (2) Clark cancelled the contract for improper reasons; and (3) the substance of Clark's cancellation notice did not specifically invoke his right to cancel under paragraph 8.3(b) and was inconsistent with the REPC's terms. As a result, Load Zone asserts, the REPC was never canceled and Clark is still obligated to purchase the property. We agree with the district court that Clark properly exercised his right to cancel the REPC.

## I. Cancellation Deadline

¶13    We see no indication in the contract that a paragraph 8.3(b) cancellation notice must be sent prior to the settlement deadline. In fact, the right to cancel is not even triggered until "the proceeds of the Loan have *not been delivered* by the Lender to [Load Zone] or to the escrow/closing office" "within four calendar days *after* Settlement." (Emphasis added.) The REPC is also silent on how long after that trigger event either party may wait before sending written notice of cancellation. This contrasts sharply with the cancellation rights created by other clauses in the REPC. For example, the agreement also conditions Clark's "obligation to purchase the Property . . . upon the Property appraising for not less than the Purchase Price." If the property

---

factual dispute about whether Clark met his obligation under the REPC to diligently pursue financing.

"has appraised for less than the Purchase Price," Clark may cancel the agreement by sending written notice but must do so "no later than" the financing deadline. And the appraisal condition is "deemed . . . waived" if Clark fails to exercise his right to cancel before that deadline. Similarly, the REPC's optional "Due Diligence Condition," which was not selected here, allows the buyer to "cancel the REPC by providing written notice" if the buyer determines "that the results of the Due Diligence are unacceptable." Like the Appraisal Condition, the right to cancel must be invoked before an agreed upon "Due Diligence Deadline" or else the "Buyer shall be deemed to have waived the Due Diligence Condition." These provisions demonstrate that the parties were capable of drafting specific deadlines for contract cancellation had they intended to do so. *Cf. Osguthorpe v. Wolf Mountain Resorts, LC*, 2013 UT 12, ¶¶ 10–16, 322 P.3d 620 (interpreting an arbitration clause to apply to a narrow class of legal disputes after comparing it to much broader language that defined the scope of an attorney fee provision in the same agreement). Thus, the failure to include a cancellation deadline in the financing condition seems deliberate.

¶14   Because the REPC provides no deadline by which the parties must send a notice of cancellation under paragraph 8.3(b), the law implies that notice must be given within a reasonable amount of time. *See Coulter & Smith, Ltd. v. Russell*, 966 P.2d 852, 858 (Utah 1998) ("[T]he settled rule is that if a contract fails to specify a time of performance the law implies that it shall be done within a reasonable time under the circumstances."). Here, Clark sent his notice of cancellation about four weeks after the settlement deadline. Load Zone argues that "[i]nherent" in paragraph 8.3(b) is an obligation to cancel the contract "before the settlement deadline, or some other deadline that would trigger a separate contractual 'default.'" Requiring such a deadline is reasonable, Load Zone maintains, because "[r]eading this clause any other way would allow a party an indefinite amount of time to" cancel, with two adverse consequences—on the one hand, a defaulting buyer

could tie up the property by withholding notice of cancellation and, on the other, sellers could never know for certain when they were entitled to the full panoply of remedies for the buyer's breach of his purchase obligation or merely the retention of the buyer's earnest money under the financing condition.

¶15   This argument is unpersuasive. First, it ignores the fact that paragraph 8.3(b) provides *either* party a right to cancel if the buyer cannot secure financing, allowing a seller with a still-willing buyer the flexibility to either wait for a loan to be approved after the financing deadline or to free the property for sale to another by giving notice of cancellation if the seller just does not want to wait any longer. And second, a "reasonable" time to cancel, while imprecise, is by no means indefinite or indeterminable. What constitutes a reasonable time depends on the circumstances. *See, e.g.*, *Richins Drilling, Inc. v. Golf Servs. Grp.*, 2008 UT App 262, ¶ 5, 189 P.3d 1280 (concluding that a drilling company breached its obligation to complete a well within a reasonable amount of time where "[e]xpert testimony established that a well of the depth contemplated by the parties should have been completed in less than half the time" the company took to finish it); *Cooper v. Deseret Fed. Sav. & Loan Ass'n*, 757 P.2d 483, 486 (Utah Ct. App. 1988) (holding that a lender failed to exercise its right to accelerate a note within a reasonable time when it waited four years after the borrower's default to do so and the borrower made payments to bring the loan current in the interim). Other than its assertion that the contract cannot reasonably be read to allow cancellation after the settlement deadline, Load Zone has not pointed to any particular circumstances in this case that show Clark's cancellation notice was unreasonably late.

¶16   Finally, reading the REPC to allow cancellation four weeks after the settlement deadline does not, as Load Zone asserts, prevent sellers from knowing "when non-performance under 8.3 end[s] and a breach under 16.1 beg[ins]." If a buyer fails to deliver "the proceeds of the Loan . . . to the escrow/closing office" by the closing deadline, he has breached

his purchase obligation, and paragraph 16.1 allows the seller to cancel the REPC and retain the buyer's earnest money, maintain the earnest money in trust and sue for specific performance, or return the buyer's earnest money and pursue any other available legal remedies. When the buyer cancels the REPC under paragraph 8.3(b), however, the contract requires the seller to accept as its "exclusive remedy" the buyer's earnest money as "liquidated damages." A buyer unable to secure a loan therefore has a powerful incentive to promptly cancel the REPC to prevent the seller from pursuing the other remedies listed in paragraph 16.1. And in the rare event that a buyer's cancellation notice is unreasonably late, all of the seller's remedies are available. The fact that the parties failed to specify a deadline for notice of cancellation may make the transition date from potential cancellation and liquidated damages to full default damages more difficult to ascertain. But that is what the parties agreed to, and "[w]e will not make a better contract for the parties than they have made for themselves." *See Bakowski v. Mountain States Steel, Inc.*, 2002 UT 62, ¶ 19, 52 P.3d 1179. We therefore conclude that the district court did not err when it determined that Clark's cancellation notice sent four weeks after the settlement deadline (and within a day or so of Load Zone's offer to extend the settlement deadline) was not unreasonably delayed.

## II. Motive to Cancel

¶17   We also agree with the district court that Clark's motivation for cancelling the REPC is not relevant to whether he properly invoked his right to do so under paragraph 8.3(b). As a general rule, "[i]f a party has a legal right to terminate [a] contract . . . , its motive for exercising that right is irrelevant." *Tuf Racing Prods., Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 589 (7th Cir. 2000); *see Hansen v. America Online, Inc.*, 2004 UT 62, ¶ 7, 96 P.3d 950 (noting that at-will employees can be terminated "for any reason (or no reason) except where prohibited by law"); *see also Milford–Bennington R.R. Co. v. Pan Am Rys, Inc.*, 695 F.3d 175, 180–81 (1st Cir. 2012) (holding that because a party to a contract "had an unassailably valid reason" to exercise a

contractual right, "its alleged ulterior motives are irrelevant"); *Dayan v. McDonald's Corp.*, 466 N.E.2d 958, 974 (Ill. App. Ct. 1984) ("As a general proposition of law, it is widely held that where good cause exists, motive is immaterial to a determination of good faith performance."); 2 *Corbin on Contracts* § 6.10, at 291 (Joseph M. Perillo & Helen H. Bender eds., 1995) ("The option between terminating and not terminating is unlimited, except as provided in the contract or in law."). As we have already noted, there is no dispute that Clark did not obtain financing until mid-October, and the contract clearly provides either party a right to cancel if "the proceeds of the Loan have not been delivered by the Lender to [Load Zone]" by the closing deadline. Clark therefore had a legal right to terminate the REPC, and we agree with the district court that his motives for doing so are not material.

## III. Substance of the Notice

¶18    Finally, the substance of Clark's cancellation notice was adequate to invoke his right to cancel. "It is generally accepted that a notice of termination or cancellation of a contract must be clear and unequivocal." *Glenn v. Reese*, 2009 UT 80, ¶ 19, 225 P.3d 185. "The focus of any inquiry into the adequacy of cancellation is on whether the notice is sufficiently clear to apprise the other party of the action being taken." *Id.* (citation and internal quotation marks omitted). And so long as the notice reasonably expresses the intention to cancel, the fact that its stated justification does not expressly invoke the pertinent contract terms does not, by itself, render the notice ineffective. *See ProMark Grp. v. Harris Corp.*, 860 P.2d 964, 967 (Utah Ct. App. 1993). For example, in *ProMark*, a manufacturer sent a written notice in August 1989 that purported to terminate its relationship with a sales representative "completely and irrevocably as of March 21, 1989." *Id.* The contract, however, prohibited the parties from retroactively terminating their relationship and required at least ninety days written notice before termination. *Id.* This court held that "[e]ven though the letter attempts to make the termination retroactive, in violation

of the terms of the . . . Agreement, this attempt does not invalidate the termination itself." *Id.* Rather, because "the letter explicitly state[d]" the manufacturer's intent to exercise its right to terminate the contract, the inconsistencies affected only "the timing of the effective date of the actual termination," not the validity of the termination itself. *Id.*

¶19    Here, Clark's cancellation notice stated, "I C. Dennis Clark wish to cancel the Real Estate Purchase Contract for the property located at 740 Spruce Drive Garden City, Utah 84028 due to the market condition. I would like to have my earnest money of $3,000.00 . . . returned." Load Zone argues this notice was ineffective because Clark "expressly sought to have his earnest money returned" and did not cite paragraph 8.3(b) of the REPC or identify the financing condition as a basis for his cancellation. While it is true that Clark was not entitled to have his earnest money returned under 8.3(b), his intent "to cancel the [REPC] for the property located at 740 Spruce Drive Garden City, Utah 84028" was clear and unequivocal. Consequently, as in *ProMark*, Clark's request for his earnest money in the cancellation notice may have conflicted with the terms of the agreement, but it "does not invalidate the termination itself." *See id.* And even though the notice did not expressly cite or implicate the contract provision that authorized the cancellation, the REPC requires only "written notice" without mandating that the parties invoke specific contractual provisions or use specific language. We also note that Load Zone's letter in late October proposing to extend the settlement deadline demonstrates it was well aware that both the financing and settlement deadlines had passed without Clark's loan having been approved. In light of these circumstances, we conclude that the notice was "sufficiently clear to apprise" Load Zone "of the action being taken," *Glenn*, 2009 UT 80, ¶ 19, and Clark's termination notice was therefore effective.

CONCLUSION

¶20    We affirm the district court's decision that Clark effectively terminated the REPC under paragraph 8.3(b) and did not breach any obligation to purchase the property. Load Zone is therefore not entitled to specific performance of the REPC and has already received all the relief to which it is entitled under the contract, Clark's earnest money.

_____