2008 UT 81

TRUGREEN COMPANIES, L.L.C., a Delaware limited liability company, and Trugreen Limited Partnership, a Delaware limited partnership, Plaintiffs and Petitioners,

v.

MOWER BROTHERS, INC., a Utah corporation; Kevin D. Bitton dba Scotts Lawn Service, a Utah entity; Greenside, L.L.C., a Utah limited liability company; Kevin D. Bitton, an individual; Jean Robert Babilis, an individual; Ryan Mantz, an individual; Lary Gaythwaite, an individual; Jim LeBlanc, an individual; David Stephensen, an individual; Jason Hiller, an individual; Matt Walker, an individual; James Clogston, an individual; Rick Deersfield, an individual; David Van Acker, an individual; Shannon Christensen, an individual; Paul Brower, an individual; James Murray, an individual; Richard Coffman, an individual; Tammy Roehr, an individual; Jessica Spencer, an individual; Margie Smith, an individual; Alfreda Egbert, an individual; Jason Beck, an individual; and Isaiah Plumley, an individual; Defendants and Respondents.

No. 20070451.

Supreme Court of Utah.

Nov. 25, 2008.

Brian C. Johnson, Jacob C. Briem, William B. Ingram, Salt Lake City, for petitioners.

Richard M. Hymas, J. Mark Gibb, Erik A. Olson, Jason R. Hull, Salt Lake City, for respondents.

NEHRING, Justice:

## INTRODUCTION

¶ 1 We consented to answer two questions that were certified to us by the United States District Court for the District of Utah. These questions are as follows:

1.  Whether under Utah law a former employer is entitled to an award of lost profits damages, or instead an award of restitution or unjust enrichment damages, where a former employee has breached contractual non-competition, non-disclosure, and employee non-solicitation provisions?

2.  Whether Utah law recognizes an unjust enrichment measure of damages for tortious interference with a competitor's contractual and economic relations?

¶ 2 We hold that lost profits is the correct measure of damages but that an analysis of a defendant's profits may be appropriate when damages are difficult to ascertain. We also hold, regarding the second question, that lost profits is the measure of damages for pecuniary injuries due to tortious interference with a competitor's contractual and economic relations.

## BACKGROUND

¶ 3 TruGreen and Mower Brothers are competing lawn care companies operating in Utah. The underlying litigation originated when one of the defendants, Ryan Mantz, resigned from TruGreen and within a few weeks began working for Mower Brothers. Other TruGreen employees followed Mr. Mantz.

¶ 4 Several months later, TruGreen sent a letter to Mower Brothers, stating that the former TruGreen employees, who were employed by Mower Brothers, had signed non-compete agreements with TruGreen. TruGreen alleged that following the departure of these employees, it "suffered ... a significant loss of critical management and sales

personnel, which has required the transfer of veteran sales representatives from [other branches] and the hiring and training of several new and inexperienced employees." In the meantime, Mower Brothers experienced impressive growth and revenue increases. TruGreen subsequently sued the former employees and Mower Brothers for breach of contract and tortious interference with prospective economic advantage.

¶ 5 TruGreen sought a temporary restraining order and preliminary injunction to enjoin its former employees from working for Mower Brothers, but it was turned away by the court. The parties then filed cross-motions for summary judgment. The court granted summary judgment for the defendants on some of their claims and denied TruGreen's motion. As part of its decision on summary judgment, the court dismissed TruGreen's allegations against several of the former employees.

¶ 6 At this point, only the following TruGreen claims remain: (1) that some of TruGreen's former employees breached three provisions of the TruGreen employment contract—a non-competition provision, a non-disclosure provision, and an employee non-solicitation provision; (2) that Mower Brothers, Jean Babilis and Kevin Bitton (Mower Brothers directors), and some of the TruGreen former employees tortiously interfered with TruGreen's economic and contractual relationships; and (3) that Mower Brothers, Bitton, and Babilis violated Utah's Unfair Competition Act. Utah Code Ann. § 13–5a–103 (2005). The defendants denied all of the claims.

¶ 7 Following the court's rulings on the summary judgment motions, a controversy arose among the parties about potential damages. TruGreen argues that an unjust enrichment or restitution measure of damages is appropriate for all of its claims. In essence, TruGreen contends that it is entitled to recover the economic benefit realized by Mower Brothers attributable to the breach of its employment contract. Mower Brothers counters that a plaintiff's lost profits, as sustained by TruGreen, is the appropriate measure of damages. The federal district court determined that there appears to be no con-

trolling Utah law in either contract or tortious interference addressing the damages issue. The court therefore certified two questions to us in aid of obtaining guidance concerning the proper measure of damages. We have jurisdiction to answer these questions under the authority granted us in Utah Code section 78A–3–102(1) (Supp.2008).

## STANDARD OF REVIEW

¶ 8 "When a federal court certifies questions of state law, we answer the legal questions presented without resolving the underlying dispute." *Tabor v. Metal Ware Corp.*, 2007 UT 71, ¶ 5, 168 P.3d 814 (internal quotation marks omitted).

## ANALYSIS

I. LOST PROFITS IS THE APPROPRIATE MEASURE OF DAMAGES FOR BREACH OF CONTRACTUAL NON–COMPETE PROVISIONS

¶ 9 The first question we are asked to review is whether under Utah law a former employer is entitled to an award of lost profits damages, or instead an award of restitution or unjust enrichment damages, where a former employee has breached contractual non-competition, non-disclosure, and employee non-solicitation provisions. We hold that lost profits is the correct measure of damages for a breach of these types of contracts.

¶ 10 Under Utah law it is well established that

> the injured party in a breach of contract action has a right to damages based upon his expectation interest as measured by "(a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform."

*Ford v. Am. Express Fin. Advisors, Inc.,* 2004 UT 70, ¶ 39, 98 P.3d 15 (emphasis omitted) (quoting Restatement (Second) of Contracts § 347 (1981)). The purpose of these damages is to compensate the nonbreaching party "for actual injury sustained, so that

[the nonbreaching party] may be restored, as nearly as possible, to the position [it] was in prior to the injury." *Mahmood v. Ross (In re Estate of Ross)*, 1999 UT 104, ¶ 19, 990 P.2d 933 (internal quotation marks omitted).

¶ 11 In an employment context, it is not uncommon for an employer to require an employee to sign a contract stating that the employee will not compete with the employer, disclose private information, or solicit the employer's customers. We have held that such covenants are enforceable as long as they are supported by consideration, negotiated in good faith, necessary to protect a company's good will, and reasonably limited in time and geographic area. *Allen v. Rose Park Pharmacy*, 120 Utah 608, 237 P.2d 823, 828 (1951). When such a contract is breached, the injured party will often seek an injunction to prevent irreparable harm. We have held that such a remedy is appropriate. *See Sys. Concepts, Inc. v. Dixon*, 669 P.2d 421 (Utah 1983).

■ ¶ 12 In addition to an injunction, employers may also seek to recover actual damages. Because we have not had the occasion to rule on the measure of such damages, we look to our sister jurisdictions for guidance. In our survey of employment contract breach jurisprudence, we have found that the general rule for measuring damages is "the amount that the plaintiff lost by reason of the breach, not the amount of profits made by the defendant." *Trilogy Network Sys., Inc. v. Johnson*, 144 Idaho 844, 172 P.3d 1119, 1121 (2007); *see also Nat'l Bank of Alaska v. J.B.L. & K. of Alaska, Inc.*, 546 P.2d 579, 590 (Alaska 1976) ("The measure for breach of a covenant not to compete is generally not the profits earned by the breaching party, but rather the lost profits of the party asserting the breach."); *Robert S. Weiss & Assoc., Inc. v. Wiederlight*, 208 Conn. 525, 546 A.2d 216, 226 (1988) ("The proper measure of damages for breach of a covenant not to compete is the nonbreaching party's losses rather than the breaching party's gains."); *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 547 (Wyo.1993) (" '[L]ost profits are generally recognized as a proper element for breach of a covenant not to compete.' " (quoting *In re Isbell*, 27 B.R. 926, 930 (Bankr.W.D.Wis.

1983))). We accept the lost profits rule as our own because it complements our current contract law precedent.

¶ 13 Our adoption of a lost profits standard, however, does not prevent a nonbreaching party from examining a defendant's profits in an attempt to assess its own economic loss. We find persuasive the Idaho Supreme Court's analysis of the issue in *Trilogy*. There, the district court found that Johnson, a former employee of Trilogy, had breached a non-compete contract. In arguing its damages, Trilogy did not offer evidence of its own loss but instead relied solely upon Johnson's gains. The supreme court found that Trilogy "failed to offer into evidence any proof of what its costs and profits would have been" and instead relied on "conclusory statements that Johnson and Trilogy would have made similar profits." *Trilogy*, 172 P.3d at 1122. It then upheld the district court's decision not to award damages because Trilogy "failed to take the measure of its damages out of the realm of speculation." *Id.*

¶ 14 The Idaho Supreme Court discussed the difficulties that can arise when attempting to approximate damages. It stated,

> The measure of damages for loss of profits is rarely susceptible of accurate proof.... Therefore, the law does not require accurate proof with any degree of mathematical certainty.... Damages need be proved only with a reasonable certainty[,] and this means that [the] existence of damages must be taken out of the realm of speculation. The mere fact that it is difficult to arrive at [an] exact amount of damages, where it is shown that damages resulted, does not mean that damages may not be awarded; it is for the trier-of-fact to fix the amount.

*Id.* (alterations in original) (citations and internal quotation marks omitted).

¶ 15 We agree and find that our own contract jurisprudence supports this analysis. We have held that "[w]hile the standard for determining the amount of damages is not so exacting as the standard for proving the fact of damages, there still must be evidence that rises above speculation and provides a reasonable, even though not necessarily precise,

estimate of damages." *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.,* 709 P.2d 330, 336 (Utah 1985). "Plaintiff, of course, has the burden to produce a sufficient evidentiary basis to establish the fact of damages and to permit the trier of fact to determine with reasonable certainty the amount of lost ... profits." *Sawyers v. FMA Leasing Co.,* 722 P.2d 773, 774 (Utah 1986).

¶ 16 The *Trilogy* court concluded that "[t]he profits realized by the defendant may be considered by the trier-of-fact, if shown to correspond with the loss of the plaintiff." 172 P.3d at 1121. In making this rule, the court looked to the earlier Idaho Court of Appeals' decision of *Dunn v. Ward.* There, the court stated that "the profits which a defendant realized in violation of his agreement may be considered, in evidence, if shown to correspond, in whole or in part, with the loss of plaintiff." *Dunn,* 105 Idaho 354, 670 P.2d 59, 61 (Ct.App.1983).

■ ¶ 17 We find Idaho's reasoning persuasive and adopt it as our own. In doing so, we are in line with other states that recognize the difficulty of calculating damages in these situations and thus allow a plaintiff to use as evidence a defendant's gains. *See K.W. Plastics v. U.S. Can Co.,* 131 F.Supp.2d 1265, 1269 (D.Ala.2001) (noting that a court may consider "the defendant's subsequent profit from enjoyment of a comparable opportunity"); *Wirum & Cash, Architects v. Cash,* 837 P.2d 692, 711 (Alaska 1992) ("[T]he breaching party's profits can be a reasonable basis for estimating plaintiff's damages."); *N. Pac. Lumber Co. v. Moore,* 275 Or. 359, 551 P.2d 431, 435–36 (1976) (holding that defendant's profits "are a reasonable basis for estimating plaintiff's damages"). We would caution, as was noted by the court in *Trilogy,* that a plaintiff must do more than merely state a defendant's profits when claiming damages. There must be some correspondence between the two so that the claim of damages is more than mere speculation. Thus, it is the loss sustained by the plaintiff that provides the core measure of damages for the breach of non-compete clauses. The gains enjoyed by the breaching employee can be relevant to that damage inquiry, but cannot alone support a damage award.

■ ¶ 18 By holding that lost profits is the appropriate measure of damages in suits concerning breaches of covenants not to compete, disclose, or solicit, we are also holding that restitution or unjust enrichment is not an appropriate measurement in these actions. As we have stated previously, restitution and unjust enrichment are remedies found in quantum meruit. *Emergency Physicians Integrated Care v. Salt Lake County,* 2007 UT 72, ¶ 10, 167 P.3d 1080. As tools of equity, they are used only when no express contract is present. *Am. Towers Owners Ass'n v. CCI Mech., Inc.,* 930 P.2d 1182, 1193 (Utah 1996); *see also Davies v. Olson,* 746 P.2d 264, 268–70 (Utah Ct.App.1987) (discussing quantum meruit as a tool to be used in equity actions).

¶ 19 Additionally, as a policy matter, we do not wish to adopt a remedy for breach of contract that punishes the breaching party. Rather, our focus is on placing "the non-breaching party in as good a position as if the contract had been performed." *Anesthesiologists Assocs. v. St. Benedict's Hosp.,* 884 P.2d 1236, 1238 (Utah 1994) (internal quotation marks omitted). Contract law is amoral and, therefore, appropriate in a business setting in which efficiency is valued. *See Marcus, Stowell & Beye Gov't Secs., Inc. v. Jefferson Inv. Corp.,* 797 F.2d 227, 232 (5th Cir.1986) (discussing the appropriateness of efficient breaches of contract); *Lake River Corp. v. Carborundum Co.,* 769 F.2d 1284, 1289 (7th Cir.1985) (discussing how efficient breaches are socially beneficial since both parties are either in the same or better position than they would have been if the contract had been performed). We have also held that punitive damages for breach of contract, by themselves, are inappropriate "even if intentional and unjustified." *Hal Taylor Assocs. v. Unionamerica, Inc.,* 657 P.2d 743, 750 (Utah 1982). "[S]uch damages are [only] allowable if there is some independent tort indicating malice, fraud or wanton disregard for the rights of others." *Id.* Thus, we confirm our earlier holdings that any measure of damages that punishes a breaching party is inappropriate.

¶ 20 In sum, our answer to the first question is that when a former employee breaches contractual non-competition, non-disclosure, and employee non-solicitation provisions, the appropriate measure of damages is the plaintiff's lost profits.

## II. LOST PROFITS IS THE APPROPRIATE MEASURE OF DAMAGES FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL AND ECONOMIC RELATIONS

¶ 21 The second question the federal district court has asked us to address is whether Utah law recognizes an unjust enrichment measure of damages for tortious interference with a competitor's contractual and economic relations. In answering this question, we narrow our analysis to pecuniary losses and not injuries to reputation or mental anguish.

¶ 22 We begin our analysis by recognizing that the Utah Court of Appeals adopted section 774A of the Restatement (Second) of Torts, which defines the measure of damages for tortious interference with a contract. *See Sampson v. Richins*, 770 P.2d 998, 1006–07 (Utah Ct.App.1989). Section 774A states,

> (1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for
>
> (a) the pecuniary loss of the benefits of the contract or the prospective relation;
>
> (b) consequential losses for which the interference is a legal cause; and
>
> (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

Restatement (Second) of Torts § 774A (1979). We also recognize that many courts in other jurisdictions have adopted section 774A or similar rules. *See Kforce, Inc. v. Surrex Solutions Corp.*, 436 F.3d 981, 984 (8th Cir.2006) ("The damages recoverable for intentional interference are: the pecuniary loss of the benefits of the contract; consequential losses for which the interference is the legal cause; and, emotional distress or actual harm to reputation if they are reasonably expected to result from the interference."); *Marcus, Stowell & Beye Gov't Secs., v. Jefferson Inv. Corp.*, 797 F.2d 227, 231–32

(5th Cir.1986) (holding that lost profits is the measure of damages in tortious interference and breach of contract); *Rite Aid Corp. v. Lake Shore Investors*, 298 Md. 611, 471 A.2d 735, 741 (Ct.App.1984) (adopting section 774A); *see also Nora v. Safeco Ins. Co.*, 99 Idaho 60, 577 P.2d 347 (1979) ("[I]n cases of tortious interference with an established business[,] ... damages for loss of anticipated earnings or profits must be shown with reasonable certainty." (internal quotation marks omitted)). We find the reasoning of these courts persuasive and hold that looking to the plaintiff's losses is the appropriate method of measuring damages in cases of tortious interference with contractual and economic relations.

¶ 23 We find especially instructive the analysis in *American Air Filter Co. v. McNichol*, 527 F.2d 1297 (3d Cir.1975). The Third Circuit held that where "there are no injuries alleged other than pecuniary losses ... the measure of damages for interference with contractual relations will be identical to that for breach of contract." *Id.* at 1300. In that case, Michael McNichol left American Air Filter to work for John F. Scanlan, Inc., a direct competitor of American. Because McNichol had signed a non-compete contract with American, American sued Scanlan for tortious interference. The court refused to adopt American's argument that its damages should be measured by "an accounting for profits earned by Scanlan from sales by McNichol." *Id.* The court stated that "[a]n accounting is an essentially equitable remedy ... [and] has not served as a substitute for legal damages." *Id.* The court then went on to say,

> The basic failing of the plaintiff's theory is that the defendant's profits are not necessarily equivalent to the plaintiff's losses. The defendant's profit margin may be higher than plaintiff's for any number of reasons—e.g., product more efficiently made or distributed. To compel defendant to disgorge these profits could give plaintiff a windfall and penalize the defendant, neither of which serves the purpose of contract damages.

*Id.*

¶ 24 By holding that purely pecuniary losses from tortious interference are measured

by the same standard as breach of contract, we need only look to the *Trilogy* standard that we adopted above for contract damages. The measure of damages, therefore, is the plaintiff's lost profits. Because proving lost profits can be difficult, there may be times, as we discussed above, when it is appropriate to look to the defendant's gains if such gains can be "shown to correspond with the loss of plaintiff." *Trilogy Network Sys., Inc. v. Johnson,* 144 Idaho 844, 172 P.3d 1119, 1121 (2007).

¶ 25 We therefore reject TruGreen's argument for unjust enrichment damages in tortious interference with contract cases. Thus, we also reject TruGreen's reliance on *National Merchandising Corp. v. Leyden,* 370 Mass. 425, 348 N.E.2d 771 (1976). In *Leyden,* the court held that unjust enrichment might be a proper remedy for tortious interference cases. It justified this position in part

> because an intending tortfeasor should not be prompted to speculate that his profits might exceed the injured party's losses, thus encouraging commission of the tort. Nor should such a defendant be heard to say that the unjust enrichment remedy is unfairly "punitive" because the plaintiff may recover more than his exact loss, when use of a tort measure might allow the defendant to retain some part of his ill gotten gains.

*Id.* at 776.

¶ 26 We are persuaded by the efficient breach arguments discussed above. When an efficient breach occurs, a breaching party may retain its profits in excess of a plaintiff's losses as long as the plaintiff is made whole. As was stated in *Lake River Corp. v. Carborundum Co.,* 769 F.2d 1284, 1289 (7th Cir.1985), such a standard is beneficial to both parties because the nonbreaching party receives what it bargained for and the breaching party is able to retain its profits made through its more efficient business practices. In the realm of tortious interference with contract or economic relations, "[i]t would be inconsistent to require the party inducing the breach to disgorge its excess profits while permitting the breaching party to retain its excess profits." *Marcus, Stowell & Beye Gov't Secs.,* 797 F.2d at 232.

¶ 27 In sum, we hold that the plaintiff's lost profits is the appropriate measure of damages for tortious interference with a competitor's contractual and economic relations. We recognize, however, that lost profits may be difficult to ascertain and therefore allow for the examination of a defendant's gains when there is a sufficient correspondence between them. We explicitly state, however, that we are ruling on pecuniary losses and not injury to reputation or mental suffering.

## CONCLUSION

¶ 28 In response to the federal district court's certified questions, we first hold that when a former employee breaches contractual non-competition, non-disclosure, and employee non-solicitation provisions, the appropriate measure of damages is the plaintiff's lost profits. Second, we hold that the plaintiff's lost profits is also the appropriate measure of damages for pecuniary injuries from tortious interference with a competitor's contractual and economic relations.

¶ 29 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING'S opinion.