**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 6, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FRIENDS OF TUHAYE, LLC, a Delaware
limited liability company,

      Plaintiff Counter Defendant
      Intervenor Defendant - Appellant,

v.

TUHAYE HOMEOWNERS
ASSOCIATION, a Utah non-profit
organization,

      Defendant Counterclaim Plaintiff
      Cross-Claimant - Appellee,

v.

JRAT INVESTMENTS, LLC, a Delaware
limited liability company,

      Intervenor Plaintiff Third-Party
      Plaintiff Cross-Claim Defendant,

v.

CHRISTOPHER STUHMER, an
individual,

      Third-Party Defendant.

No. 18-4065
(D.C. No. 2:14-CV-00901-DN)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **PHILLIPS**, **KELLY**, and **CARSON**, Circuit Judges.

_____

This case concerns the interpretation and enforcement of covenants governing a luxury residential community. A developer, which owned eight lots within the community, claims that the covenants apply only after homes have been built and sold. The community's homeowners association and the district court say otherwise. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Friends of Tuhaye (FOT) is a real-estate developer that purchased several lots in the Tuhaye Subdivision, intending to build and sell homes. FOT organized these lots into a sub-community called Christopher Homes at Tuhaye (Christopher Homes). Starting in 2007, FOT poured eight concrete foundations within Christopher Homes. Misfortune fell when the bank financing the project failed. The FDIC froze the bank's assets, including FOT's partially developed lots. As a result, FOT halted construction. For the next several years, the foundations sat dormant and exposed.

The Tuhaye Homeowners Association (the HOA) oversees the Tuhaye Subdivision and, by extension, Christopher Homes. In 2009, the HOA began discussing the "nuisance, eyesore, and safety hazard" created by the unfinished foundations. Appellant's App. at 626. Meeting minutes from 2009 reflect the HOA's growing concern with the foundations as well as FOT's professed intent to bring in topsoil and fill in the foundations. FOT never followed through with this plan.

2

In 2012, several Tuhaye residents complained to the HOA and local officials about the foundations. One resident "complained of the attractive nuisance that the exposed foundations posed to his young sons." *Id.* at 625. Another resident "sent a letter with pictures complaining of the safety hazard caused by the exposed foundations to the Wasatch County Fire District and the Wasatch County Building Office." *Id.* She also sent a copy of the letter to FOT. And a third resident complained to the HOA about the communal "safety hazard caused by the exposed foundations" and protruding rebar reinforcements. *Id.*

In response, the HOA informed FOT that the exposed foundations violated the covenants' prohibition against nuisances. FOT responded by offering to build a fence around the foundations. The HOA declined the offer, insisting that a fence was not a suitable long-term solution. FOT remained adamant that a fence was an appropriate solution and sent a crew to the subdivision with instructions to install a chain-link fence around the foundations. A security guard turned the crew away.

On September 10, 2012, the HOA sent a letter to FOT advising that the Architectural Review Committee (the ARC) had deemed the foundations a nuisance. In the letter, the HOA reiterated that "the most reasonable way to abate the nuisance was to cover the exposed foundations with quality top soil." *Id.* at 255. The letter gave FOT 14 days to abate the nuisance before the HOA would take corrective action.

During an October 2012 HOA meeting, the topic of the exposed foundations again arose. And, once again, the ARC stated that "a fence [would] not mitigate the

3

nuisance and [would] actually present[] a greater nuisance or liability risk." *Id.* at 265. A few weeks later, the HOA filled in the exposed foundations and billed FOT for the cost of the work. FOT refused to pay, so the HOA placed an assessment lien on each of the lots.

In 2014, FOT agreed to sell six of its lots to JRAT Investments. As part of the sale, FOT funded an escrow account as security against the HOA liens on the lots. FOT then sued the HOA for trespass, slander of title, and injunctive relief. FOT also alleged that the HOA had acted in bad faith by refusing FOT's offer to erect a protective fence. The HOA counter-claimed for breach of contract and moved for summary judgment. Soon after, JRAT intervened in the suit and asserted a claim to the escrow funds. In turn, the HOA cross-claimed against JRAT seeking foreclosure on the liens.

The district court granted the HOA's motion for summary judgment. Later, the court approved a stipulated order between JRAT and the HOA. The parties stipulated that judgment be entered against JRAT in favor of the HOA. They also stipulated that JRAT would not hinder the HOA's attempts to execute on the escrow funds. After additional briefing, the court entered a separate order awarding damages and attorney's fees to the HOA. FOT now appeals.

## DISCUSSION

FOT appeals the district court's summary-judgment order as well as the order awarding damages and attorney's fees. FOT also attacks the stipulations between JRAT and the HOA. We address each of FOT's arguments in full.

4

First, we consider whether the covenants apply to FOT's eight partially developed lots. The answer to this inquiry dictates whether the district court correctly dismissed FOT's trespass and slander-of-title claims and properly denied FOT's request for injunctive relief. Second, we consider whether, as a matter of law, the HOA breached the implied covenant of good faith and fair dealing. Next, we analyze the stipulated order between the HOA and JRAT, and finally, we turn our attention to the damage award and the grant of attorney's fees. Finding no error in any of these issues, we affirm.

## I.      The Summary-Judgment Order

FOT first attacks the district court's order granting summary judgment in the HOA's favor. We review de novo a grant of summary judgment. *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1536 (10th Cir. 1995). "Summary judgment is appropriate when, viewing the record in the light most favorable to the nonmoving party, there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *TPLC, Inc. v. United Nat'l Ins. Co.*, 44 F.3d 1484, 1489 (10th Cir. 1995) (internal quotation marks omitted).[1]

---

[1] Jurisdiction in this case is premised on the parties' diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1). In diversity cases, we apply the substantive law of the forum state and federal procedural law. *Racher v. Westlake Nursing Home Limited Partnership*, 871 F.3d 1152, 1163 (10th Cir. 2017). Here, the forum state is Utah.

**A.    FOT's Claims for Trespass, Slander of Title, and Injunctive Relief**

We first consider whether the district court erred when it denied FOT's request for injunctive relief and dismissed FOT's claims for trespass and slander of title. To resolve these issues, we must determine whether the covenants apply to FOT's lots. The answer will dictate the propriety of the district court's summary-judgment ruling.

The Tuhaye Subdivision was under the control of a master declaration—titled Declaration of Covenants, Conditions, and Restrictions for Tuhaye, A Planned Community (the Covenants)—which contained an extensive set of regulations. A master declaration like the one at issue here is a contract between a homeowners association and the property owners. *Swan Creek Vill. Homeowners Ass'n v. Warne*, 2006 UT 22, ¶ 44, 134 P.3d 1122, 1131. When interpreting such contracts, we look to the plain language contained "within the four corners of the contract." *Café Rio, Inc. v. Larkin-Gifford-Overton, LLC*, 2009 UT 27, ¶ 25, 207 P.3d 1235, 1240 (quoting *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134, 1141). If the language is clear, our analysis ends, and we enforce the plain terms. *Id.* If the language is ambiguous, we will consider extrinsic evidence to determine the parties' intent. *Id.*

Here, we see no ambiguity in the Covenants and, accordingly, we interpret the document according to its plain terms. The Covenants state that by accepting a deed to property within the Tuhaye Community, a "Person . . . evidences his, her, or its intent that all the restrictions, conditions, covenants, rules and regulations contained in this Declaration shall run with the land and be binding on all subsequent and future

6

Owners." Appellant's App. at 133. The Covenants define "Person" as "a natural person, corporation, business trust, estate, trust, partnership, association, limited liability company, limited liability partnership, joint venture, government, governmental subdivision or agency, or other legal or commercial entity." *Id.* at 132. We fail to see how these terms would not include FOT. It is, after all, a limited-liability company that accepted deed to the lots within the Tuhaye Community. Accordingly, we conclude that the Covenants apply to FOT.

Alternatively, FOT argues that even if the Covenants apply generally to its lots, the Covenants' specific assessment provision is inapplicable in this case. Once again, the Covenants' plain language undermines FOT's claim. The Covenants state that "each owner, other than the Declarant, by becoming the Owner of a Lot or Parcel, is deemed to covenant and agree, to pay Assessments to the [HOA] in accordance with this Declaration."[2] *Id.* at 151. In turn, the Covenants define "Owner" as "the Person or Persons who individually or collectively own fee title to a Lot or Parcel (as evidenced by a Recorded Instrument)." *Id.* at 131. FOT inarguably qualifies as an "Owner," subjecting it to the Covenants' assessment provision. The Covenants' plain language permits no other interpretation.

FOT challenges this conclusion on three fronts. First, FOT claims that the assessment provision does not apply, because FOT is a sub-developer and the

___

[2] The covenants define "Declarant" as "Tuhaye LLC, a Utah limited liability company, and its successors, and any Person to whom Tuhaye LLC may expressly assign any or all of its rights under this Declaration." Appellant's App. at 129.

Covenants' assessment provision does not expressly apply to sub-developers. But the Covenants never use the term "sub-developer." Though the Covenants' assessment provision does not expressly state that it applies to sub-developers, the provision does expressly state that it applies to owners. FOT is an owner as that term is used in the Covenants.

Second, FOT relies on the Christopher Homes covenants to argue that the assessment provision applies only to third-party purchasers of homes. Specifically, FOT focuses on the provision that details how and when assessments apply to purchasers of finished houses within Christopher Homes. FOT claims that this provision clarifies that assessments "are only authorized after lots are sold from FOT to third party purchasers, not before." *Id.* at 399. According to FOT, this means that the Tuhaye Subdivision assessment provision applies only to third-party purchasers. We disagree.

The limitations contained in the Christopher Homes covenants have no impact on the Covenants that govern the Tuhaye Subdivision as a whole. Each document operates independently. If the two conflict, the Covenants control. The Covenants' plain language subjects all owners in the Tuhaye Subdivision to assessments.[3] This includes FOT.

Finally, FOT claims that the HOA never applied assessments to its properties, and that this course of conduct demonstrates, at the very least, ambiguity about

_____

[3] The one exception is that the assessment provision does not apply to the declarant, *i.e.*, Tuhaye LLC.

8

whether FOT falls within the Covenants' assessment provision. But we do not consider the course of conduct between the parties unless we first determine that the language is ambiguous. *Café Rio, Inc.*, 2009 UT 27, ¶ 25, 207 P.3d at 1240. As detailed above, we identify no ambiguity in the Covenants' terms, so the course of conduct between FOT and the HOA is immaterial. Thus, looking only to the Covenants' plain language, we conclude that the Covenants apply in full to FOT's eight lots.

Having determined that the Covenants apply to FOT's eight lots, we now consider whether the district court properly dismissed FOT's trespass claim and slander-of-title claim and denied FOT's request for injunctive relief. We turn first to FOT's trespass claim. To plead a viable trespass claim, FOT must allege that the HOA *unlawfully* entered its land. *See Walker Drug Co., Inc. v. La Sal Oil Co.*, 972 P.2d 1238, 1243 (Utah 1998). FOT fails in this effort. The HOA's entry onto the land was authorized by the Covenants and was lawful.

The Covenants provide that the ARC "in its sole discretion" may deem a condition a "nuisance." Appellant's App. at 139. Once the ARC identifies a nuisance, the Covenants require the HOA to notify the offending landowner. If the offending landowner does not take corrective action within 14 days, the Covenants permit the HOA to take corrective action. The HOA acted in accordance with these provisions and was entitled to enter FOT property to abate the nuisance. Because the HOA's entry on the land was lawful under the Covenants' terms, FOT's trespass claim fails as a matter of law.

9

Likewise, the district court properly dismissed FOT's slander-of-title claim. As the court explained, for a slander-of-title claim, "(1) there must be a publication, either oral or written, of a slanderous statement—one that is derogatory or injurious to the legal validity of an owner's title or to his or her right to sell the property; (2) the statement must be false; (3) the statement must have been made with malice; and (4) the statement must cause actual or special damages to the plaintiff." *Id.* at 636 (citing *Bass v. Planned Mgmt. Servs., Inc.*, 761 P.2d 566, 568 (Utah 1988)); *see also Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1243 (10th Cir. 2013) (outlining elements of a slander-of-title claim in Utah). The fatal flaw in FOT's slander-of-title claim is that it lacks proof that the publication—*i.e.*, the lien—was false.

Once FOT failed to abate the nuisance, the Covenants authorized the HOA to take corrective action and assess the cost to FOT. The Covenants provide that the cost "shall be added to and become a part of the Assessment to which the offending Owner and the Owner's Lot or Parcel is subject and shall be secured by [an] Assessment Lien." *Id*. at 157. The HOA acted in accordance with this provision. Thus, FOT's slander-of-title claim fails as a matter of law, because the liens on the property were not false but instead were properly recorded as the Covenants instruct. Finally, the district court properly denied FOT's request for injunctive relief.[4]

---

[4] FOT sought an injunction requiring the HOA to "to remove the dirt and restore FOT's remaining land . . . to the condition and state they were in prior to the HOA's trespass and dumping." Appellant's App. at 10.

10

Though district courts retain discretion to grant injunctive relief, it is an "extraordinary remedy" that "should not be lightly granted." *Sys. Concepts, Inc. v. Dixon*, 669 P.2d 421, 425 (Utah 1983). Injunctive relief is warranted only if "it appears by the pleadings on file that a party is entitled to the relief demanded." *Id.* As explained above, FOT's claims fail as a matter of law. FOT is not entitled to any relief, let alone injunctive relief. Accordingly, the district court did not err by denying FOT's request for injunctive relief.

## B. FOT's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

We next address FOT's claim that the HOA breached the implied covenant of good faith and fair dealing. FOT argues that the district court erred by granting summary judgment, because "whether the implied covenant has been breached presents a question of fact not appropriate for summary adjudication." Appellant's Op. Br. at 26. In other words, FOT believes that a claimed breach of the implied covenant of good faith and fair dealing should always survive summary judgment.

We acknowledge that "whether there has been a breach of good faith and fair dealing is a factual issue" that is "generally inappropriate for decision as a matter of law." *Cook v. Zions First Nat'l Bank*, 919 P.2d 56, 61 (Utah Ct. App. 1996) (quoting *Republic Group, Inc. v. Won-Door Corp.*, 883 P.2d 285, 291 (Utah App. 1994)). But this general rule contains an exception. Absent a genuine issue of material fact, the court can decide as a matter of law that a claimed breach of the implied covenant fails. *See Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 48, 194 P.3d 956, 968–69

11

("Summary judgment [as to the claimed breach of the implied covenant of good faith] is appropriate only when reasonable minds could not differ in concluding that the party accused of breaching the covenant did not wrongfully exercise its discretionary power or contractual authority for a reason beyond the risks that the other party assumed or for a reason inconsistent with the other party's justified expectation."). Contrary to FOT's claim, then, summary judgment may be appropriate for a claimed breach of the implied covenant of good faith and fair dealing.[5]

Second, FOT argues that while the HOA might have been in technical compliance with the Covenants, the decision to deem the lots a nuisance and prohibit the construction of a fence was made in bad faith. We are unconvinced.

Under the implied covenant of good faith and fair dealing, each party, by signing a contract, promises not to intentionally do anything that will destroy the other party's right to receive the benefits of the contract. *Egget v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193, 197. Accordingly, "examination of express contract terms alone is insufficient to determine whether there has been a breach of

---

[5] FOT further argues that the district court erred by not construing any ambiguities in the Covenants against the HOA. But FOT identifies no ambiguities that the court improperly construed. This argument is inadequately developed, so we do not consider it. *See, e.g.*, *Armstrong v. Arcanum Grp., Inc.*, 897 F.3d 1283, 1291 (10th Cir. 2018) ("'The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.'" (quoting *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004)) (alteration in original)).

the implied covenant of good faith and fair dealing." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991).

Importantly, the covenant of good faith and fair dealing "cannot be read to establish new, independent rights or duties to which the parties did not agree ex ante." *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 45, 104 P.3d 1226, 1240. Instead, the covenant is intended to protect "the express covenants and promises of the contract." *Peterson v. Browning*, 832 P.2d 1280, 1284 (Utah 1992) (internal quotation marks omitted). Our role is to discern the risk that the party claiming the breach assumed and determine whether the exercise of discretion that the Covenants permit fell within this contemplated range of risk. *See Oman*, 2008 UT 70, ¶ 47, 194 P.3d at 968.

FOT argues that the ARC acted in bad faith when it deemed the exposed foundations a nuisance. In support, FOT claims that the HOA had ignored the foundations until the relationship between the HOA's principal and Christopher Homes' principal turned sour sometime in 2011–12. This failed relationship, FOT claims, motivated the ARC's decision to deem the foundations a nuisance.

The record tells a different story. While the HOA did not deem the foundations a nuisance immediately after they fell into disrepair, meeting minutes from 2009 detail that the hazardous conditions were a topic of concern years before any relevant relationship soured. Moreover, before the ARC made its decision, several Tuhaye residents lodged complaints about the unsafe conditions. Finally, FOT does not claim that the HOA's principal held any control over the ARC. Thus, even if we believed

13

that the HOA's principal intended to act in bad faith, it would be entirely speculative to imprint his motive onto the ARC.

Regardless of the two principals' relationship, the relevant inquiry is whether FOT assumed the risk that the ARC would deem the exposed foundations a nuisance. We conclude that such a risk was within the Covenants' contemplated scope.

The Covenants' aim is to provide a "high quality of life" for all Tuhaye residents. Appellant's App. at 145. To that end, the Covenants strictly regulate nearly all aspects of housing and development within the Tuhaye Subdivision. The Covenants regulate satellite installation, curbside trash cans, and even clotheslines. The Covenants state that all property must be kept in an aesthetically pleasing condition and must not be "offensive or detrimental to any other property in the vicinity." *Id.* at 139. Unfinished concrete foundations surely run afoul of the Covenants' chief aim. Thus, we conclude that FOT assumed the risk that the foundations would be deemed a nuisance and that corrective action would be required.

FOT also claims that the ARC acted in bad faith when it denied FOT's request to build a chain-link fence around the foundations. The Covenants state that "walls and fences on a Lot shall be prohibited unless expressly authorized by the [ARC]." *Id.* at 157. The Covenants give the ARC discretion to approve "any addition, alteration, repair, change or other work" on any subdivision property and they make clear that "[n]o improvement shall be constructed, installed, or removed within the Project without the prior written approval of the [ARC]." *Id.* at 137. This is all to say

14

that the Covenants hand the ARC nearly complete discretion to approve—or disapprove—any proposed construction or improvement within the Tuhaye subdivision. Thus, FOT assumed the risk that the ARC would deny its request to build a chain-link fence around the foundations. We conclude that the ARC did not act in bad faith by deeming the foundations a nuisance and denying FOT's proposed chain-link fence.

## II.     The HOA and JRAT's Stipulated Order

FOT claims the district court erred when it approved the stipulated order between the HOA and JRAT. In its opening brief, FOT's argument consists of no more than the conclusory statement that "[t]he stipulation was unlawful and the District Court's subsequent order granting judgment in favor of the HOA and against JRAT in the amount of $119,610.92 must be set aside." Appellant's Op. Br. at 33. FOT does not develop this argument or even state the appropriate standard of review. Accordingly, FOT has waived this issue by insufficiently briefing it on appeal. *See United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that arguments inadequately briefed in the opening brief are waived." (alteration omitted) (internal quotation marks omitted)).

Even if we considered the issue, we would see no merit in it. FOT appears to argue that the district court erroneously accepted a stipulation concerning money that belonged to neither JRAT nor the HOA, *i.e.*, the funds that FOT had placed in escrow. But a quick review of the district court's order dispels this notion. JRAT and the HOA did not stipulate to ownership of the escrow funds. Instead, the parties

15

stipulated that judgment be entered against JRAT in the amount of $119,610.92. The parties then stipulated that JRAT would "not object or interfere, but [instead would] cooperate with the [HOA] in attaching or executing on the Escrow Funds to satisfy this Judgment." Appellant's App. at 646. The parties merely stipulated that JRAT would not hinder the HOA's attempt to obtain the escrow funds. The district court did not err in accepting this stipulation.

## III.    The Damage Award

FOT advances two reasons why it believes the damage award was made in error. First, FOT claims that the district court erred by not excluding evidence that FOT believes was untimely disclosed. We conclude that the invited-error doctrine precludes FOT from raising this claim. "[T]he invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt." *United States v. Deberry*, 430 F.3d 1294, 1302 (10th Cir. 2005). Here, FOT urged the district court to admit the same evidence it now complains of on appeal.[6]

---

[6] FOT also argues that the district court improperly admitted evidence at the summary-judgment stage. After a careful review of the court's order, we disagree. Even if we assumed that the HOA had failed to timely disclose all its evidence, Rule 37 of the Federal Rules of Civil Procedure gives district courts discretion to admit untimely disclosed evidence if admission would be harmless. In its order granting summary judgment, the district court relied solely on undisputed facts, most particularly the Covenants' plain language. There is no harm in this because, presumably, FOT was in possession of the Covenants from the beginning of its suit and FOT did not challenge any of the language contained in the Covenants. Accordingly, we do not see how any untimely disclosure of such a document would have harmed FOT.

On June 7, 2017, the district court entered its original order granting summary judgment in the HOA's favor. The court concluded this order by stating that it would not decide the damage amount until the parties had provided additional evidence. On October 12, 2017, the HOA submitted a motion in support of its damage request. The HOA attached several ledgers to this motion. The ledgers were addressed to FOT and listed the cost for backfilling each foundation.

On November 7, 2017, the court held a hearing to discuss the damage award. At the hearing, the court questioned the HOA about the source of the ledgers and requested additional evidence detailing the final cost amount. The court then asked counsel for the HOA to address these matters in a reply brief and asked both parties if all factual issues could be resolved by additional briefing, obviating the need for a bench trial.

In response, FOT's attorney stated that he believed a bench trial was unnecessary and agreed to resolve the matter through additional briefing. FOT's attorney agreed that the HOA could file a reply brief and attach "affidavits and things like that," Appellant's App. at 797, and counsel reiterated that he did not object to the HOA admitting "whatever, you know, summary judgment type of sworn testimony that [the HOA] would need to provide" to address the court's concerns, *id.* at 798. The court ordered the HOA to file a reply brief and FOT to file a surreply.

As requested, the HOA attached to its reply an affidavit and invoices itemizing the cost to backfill the lots. FOT then had the opportunity to analyze these documents and voice any concern about their accuracy in a surreply. FOT cannot now argue that

17

the district court erred by admitting these documents. FOT encouraged the court to do so. Accordingly, FOT has waived its right to challenge this evidence on appeal. *See United State v. Fields*, 516 F.3d 923, 939 (10th Cir. 2008) ("[B]ecause Fields invited any error of which he now complains, we decline to review it.").

Second, FOT claims that the district court incorrectly calculated the HOA's damage award. A party is required to prove its damages to a "reasonable certainty." *TruGreen Cos. v. Mower Brothers, Inc.*, 2008 UT 81, ¶ 15, 199 P.3d 929, 933. "[W]hile the standard for determining the amount of damages is not so exacting as the standard for proving the fact of damages, there still must be evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages." *Id.* (internal quotation marks omitted). The HOA "has the burden to produce a sufficient evidentiary basis to establish the fact of damages and to permit the trier of fact to determine with reasonable certainty the amount of lost . . . profits." *Sawyers v. FMA Leasing Co.*, 722 P.2d 773, 774 (Utah 1986). The amount of "damages must be taken out of the realm of speculation." *TruGreen Cos.*, 2008 UT 81 ¶ 14, 199 P.3d at 932 (internal quotation marks omitted). So long as there is "competent evidence to support the findings upon which the judgment is rendered, the judgment must be sustained." *Sawyers,* 722 P2d at 774.

FOT's argument on appeal rests on the deposition of Steve Sovinsky in which he stated that he oversaw three other workers as they backfilled the foundations. He stated that they received the dirt for free and used the HOA's equipment to complete the task. FOT claims that Sovinsky's deposition proves that the HOA's damages were

18

limited to the workers' wages multiplied by the number of hours needed to complete the work. According to FOT, the HOA's damages should be no more than $2,070 per foundation.

We reject FOT's claim and conclude that the HOA provided competent evidence to support the district court's damage award of $59,771.32. In its request for damages before the district court, the HOA provided the court with invoices itemizing the cost associated with backfilling each lot. The HOA also provided an affidavit from Jessica Layton, the HOA's accountant, who explained the invoices. In the affidavit, Layton stated under penalty of perjury that she had been the accountant for the HOA since 2013 and had a thorough knowledge of the costs associated with backfilling FOT's lots. Layton explained that the cost to backfill each foundation included the cost of owning and operating the machinery, "including fuel, maintenance at the scheduled intervals based on runtime, and the depreciation inherent in owning and operating such machinery." Appellant's App. at 812. Additionally, Layton stated that "[a]lthough the fill dirt was acquired at no cost, the [HOA] screened the dirt to remove larger rocks prior to being used to filled [sic] the exposed basements." *Id.* at 813. Counsel for the HOA pointed out that the cost to employ the workers was more than just what they received for an hourly wage and

19

instead includes "federal and state taxes, and the cost of insurance and benefits." *Id.* at 808.[7]

The invoices then detail the cost per hour and the total hours that were needed to backfill the foundations. The invoices also detail an 8 percent per annum interest rate on the original costs starting in 2012. The interest rate was set by a Resolution of the Association's Board of Directors in 2008, prior to the assessments against FOT and in accordance with the Covenants, which state that "[a]ny Assessment, or any installment of an Assessment, not paid within thirty (30) days after the Assessment, or the installment of the Assessment, first became due shall bear interest from the due date at the rate established from time to time by the Board." *Id.* at 155. Based on this, the district court awarded the HOA $59,771.32 in damages. We see no error as the HOA provided competent evidence to support the damage award.

## IV. Attorney's Fees

FOT also argues that the district court erred when it awarded the HOA attorney's fees. FOT claims that the HOA's request for attorney's fees was untimely and, as a result, should have been denied. This is not true.

Under Rule 54 of the Federal Rules of Civil Procedure, unless a statute or court order provides otherwise, a motion for attorney's fees must be "filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). Rule 54(a)

---

[7] FOT appeals the damage award for only two lots—Lots 15 and 18. The damages associated with the other six lots were covered by the stipulated judgment entered between the HOA and JRAT.

20

defines "judgment" as "a decree and any order from which an appeal lies." FOT argues that the HOA should have moved for attorney's fees within 14 days after the district court entered its summary judgment order on June 7, 2017.

The problem with FOT's argument is that the June 7, 2017 order was not "final" as Rule 54 requires. FOT is aware of this fact. FOT tried to appeal the June 7 order. After FOT filed its notice of appeal, we ordered briefing so FOT could explain its view that we have jurisdiction. From our vantage point, the district court's June 7, 2017 order was not a final order, because the case still had issues needing resolution. *See Albright v. UNUM Life Ins. Co. of America*, 59 F.3d 1089, 1093 (10th Cir. 1995). In response to our request for additional briefing, FOT moved to voluntarily dismiss its appeal and we granted its motion. *Friends of Tuhaye v. Tuhaye Homeowners Ass'n*, No. 17-4108, 2017 WL 6762402, at *1 (10th Cir. Aug. 21, 2017).

We reject FOT's claim that the HOA had to request attorneys' fees within 14 days after the June 7, 2017 order. Rule 54 requires that the request be made 14 days after a "final" order. The court did not issue a "final" order until March 29, 2018, when it decided the issue of damages. The district court decided the issue of attorney's fees at the same time. Thus, the HOA's request for attorney's fees was not untimely.[8]

---

[8] As a practical matter, FOT's argument makes little sense. FOT's argument, if accepted, would force the HOA to submit its request for attorney's fees before the attorneys' work was done. After the June 7, 2017, order was filed, counsel for the HOA filed several motions and attended at least one hearing to resolve the outstanding issues in the case. Any motion for attorney's fees would have been incomplete if filed on June 21, 2017. This would not serve judicial economy.

FOT's final argument is that the district court's award of attorney's fees was unreasonable. In short, FOT argues that the court failed to sufficiently articulate its basis for the award amount.

We review for abuse of discretion a district court's award of attorney's fees. *Okla. Intrastate Transmission, LLC v. 25 Foot Wide Easement*, 908 F.3d 1241, 1246 (10th Cir. 2018). A district court abuses its discretion when it makes "a clear error of judgment or exceed[s] the bounds of permissible choice in the circumstances." *Brandau v. Kansas*, 168 F.3d 1179, 1181 (10th Cir. 1999) (internal quotation marks omitted). Additionally, we generally "defer to the District Court's judgment because an appellate court is not well suited to assess the course of litigation and the quality of counsel." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1200–01 (10th Cir. 1986) (quoting *Copeland v. Marshall*, 641 F.2d 880, 901 (D.C. Cir. 1980)); *id.* at 1201 (adding that the "trial court saw the attorneys' work first hand, . . . and has far better means of knowing what is just and reasonable than an appellate court" (internal quotation marks omitted) (citations omitted)).

FOT argues for reversal on grounds that the district court failed to state on the record why it believed the attorney's fee amount was appropriate. But as a review of our caselaw reveals, we have never required an exhaustive explanation to justify an award of attorney's fees. Instead, all that is necessary is that "the district court . . . provide a concise but clear explanation of its reasons for the fee award." *Id.* (internal quotation marks omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)

(cautioning that "[a] request for attorney's fees should not result in a second major litigation"). We conclude that the district court satisfied this standard.

In determining the proper amount of attorney's fees, the district court considered two objections from FOT. The court sustained one objection—reducing the HOA's requested amount of allowed fees—and overruled FOT's objection that the damage award should be limited to approximately $2,000 per lot. The court then ruled that the "fees charged in this matter are reasonable in terms of rate for the market and the amount of time allocated to the litigation tasks for a case that has been active since August 2014." Appellant's App. at 895. Finally, the court noted that though the attorney's fee award exceeded the damage award, the difference was "justified given the nature of this case, complexity of the issues and many motions presented." *Id.* We cannot identify any error in this ruling. The award is grounded in reasonableness, and the court provided a concise statement to support its decision. *See Mares*, 801 F.2d at 1201. Accordingly, we affirm the attorney's fee award.

Finally, we must decide whether to grant the HOA's request for attorney's fees on appeal. When a contract permits an award of attorney's fees in the district court, it also "includes attorney's fees incurred by the prevailing party on appeal." *Mgmt. Servs. Corp. v. Dev. Assocs.*, 617 P.2d 406, 609 (Utah 1980). Here, the contract entitles the HOA to attorney's fees in the district court and, thus, as the HOA is the prevailing party it is also permitted to attorney's fees on appeal. Accordingly, we grant the HOA's request for attorney's fees for the costs associated with litigating this appeal.

## CONCLUSION

For the reasons stated above we affirm the district court's grant of summary judgment, damage award, and attorney's fees award. We also grant the HOA's request for attorney's fees on appeal. Accordingly, we remand the case to the district court for a determination of reasonable attorney's fees to be granted to the HOA for the appeal of this case.

Entered for the Court


Gregory A. Phillips
Circuit Judge